Opinion issued August 21, 2003







            










In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-01-01093-CR
____________
 
GUADENCIO HUERTA, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 870390
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Guadencio Huerta, guilty of aggravated sexual assault
of a child under the age of 14 years and assessed his punishment at confinement for
25 years. Appellant presents four points of error. He contends that the trial court
erred in excluding evidence of the complainant’s past “sexual behavior” that rebutted
or explained the State’s medical evidence and demonstrated the complainant’s bias
and motive to fabricate testimony. Appellant also contends that the trial court denied
him his right to confront and cross-examine the complainant, under the United States
and Texas Constitutions, concerning her potential bias or motive for accusing
appellant. We affirm.
Facts and Procedural Background
          The complainant,


 who is appellant’s niece, testified that appellant had sexually
assaulted her. The complainant lived with her mother, father, and brothers in an
apartment, and one day


 they received a telephone call from relatives in Mexico
informing them that one of her uncles had died. As her family was mourning,
appellant came over to the apartment and took the complainant to his apartment,
where he “was disrespectful” to her. The complainant explained that appellant
removed her clothing and underwear and threw her on the floor. She testified that
appellant then removed his pants and underwear and placed his penis inside her
“private part,” placed his mouth on her “private part,” placed his hand in her anus,
and forced her to put her mouth on his penis. The complainant testified that she saw
a sticky “white thing” come out of appellant’s “private part” during this incident. 
When the complainant’s brother, A.G.,


 came to appellant’s apartment and knocked
on the door to get the complainant and take her back home, appellant told the
complainant not to tell her mother about what had happened or he would hit her. The
complainant testified that she went home with her brother, but did not immediately
tell anyone what happened because she was afraid that appellant would hit her. The
complainant further testified that appellant had sexually assaulted her in a similar
fashion three other times – twice at his apartment and once in Mexico.
          Isabel Huerta, the complainant’s mother and appellant’s sister, testified that,
after she moved her family to a different apartment complex, she told the complainant
that, because the complainant was “about to become a young lady,” she should tell
her if anyone had ever tried to touch any part of the complainant’s body. Huerta
testified that, in response, the complainant told her that appellant had sexually
assaulted her both at his apartment and at the complainant’s grandmother’s house in
Mexico. The complainant told Huerta that she had first reported appellant’s behavior
in Mexico to the complainant’s grandmother, Maria Jimenez. Huerta subsequently
took the complainant to be examined by a doctor.
          Afi Quashie, a registered nurse, testified that she conducted a physical
examination of the complainant. Because she was unable to see the complainant’s
hymen, Quashie asked one of the doctors at the clinic to assist her. Dr. Karen Suttle,
a family practitioner, testified that she examined the complainant and formed the
opinion that her hymen appeared abnormal. Dr. Suttle explained that she observed
hymenal tags and hymenal disruption, which indicated that the complainant’s hymen
had been torn at some point in time. Dr. Suttle testified that her observations of the
complainant were consistent with a finger or penis having been inserted into the
complainant’s vagina.
          Dr. Sheela Lahoti, a pediatrician who practices at the Harris County Children’s
Assessment Center, testified that Dr. Margaret McNeese, the medical director of the
Center, also examined the complainant.


 Based on her review of Dr. McNeese’s
records, Dr. Lahoti testified that Dr. McNeese examined the complainant and
observed a deep V-shaped notch located at the 6:00 o’clock position on the
complainant’s hymen. Dr. McNeese’s finding, coupled with the history of physical
trauma to the vaginal area, was “highly suggestive of penetrating trauma.”
          Based on the findings of the doctors and the complainant’s report that appellant
had molested her, Betty Foster, a social worker at the clinic, notified the Houston
Police Department. The police subsequently arrested appellant at his apartment.
          Maria Jimenez, the complainant’s grandmother and appellant’s mother, who
lives in Mexico, testified that the complainant had never told her that appellant had
ever sexually assaulted her. On the day of the charged assault, Jimenez was present
at the apartment where the complainant lived and never saw appellant leave with the
complainant. However, Jimenez conceded that she fainted or passed out that day
after she learned of the death of one of her sons in Mexico. Jimenez also testified that
the complainant told her that she had been “molested” by her brother, A.G.
          Videotaped interviews of both the complainant and A.G. were conducted by
Jill Smith, a forensic interviewer with the Children’s Assessment Center. The parties
stipulated that the transcripts of those interviews, prepared by a Spanish translator,
were accurate. In his interview with Smith, A.G. told Smith that he and the
complainant had been caught by their mother doing “adult things” together, including
“moving each other around,” “kissing,” and “hugging.” A.G. also stated that, when
he and the complainant were doing these things, they were always clothed. A.G. also
told Smith that, after catching them, their mother scolded them and threatened to send
them to Mexico. In her interview with Smith, the complainant stated that appellant
and another of her uncles had individually molested her on different occasions. The
complainant did not mention any sexual behavior involving her brother or threats
from her mother to send her to Mexico.
          Appellant offered the transcripts of Smith’s interviews of the complainant and
A.G. as evidence to rebut or explain the medical evidence presented by the State and
to show a motive or bias on the part of the complainant for accusing appellant of
sexually assaulting her.


 The trial court sustained the State’s objection to the
transcripts being admitted as evidence, and appellant subsequently made an offer of
proof of both the typewritten transcripts and videotapes of the interviews.



          A.G. was called as a witness by appellant, and he testified that he was
interviewed by Smith. When questioned by appellant’s counsel concerning the
specifics of that interview, A.G. testified, in relevant part, as follows:
Q:Do you recall telling Ms. Smith about something happening when
you first came here from Mexico and that your mom was upset
and said – and warned you that she could send you back to
Mexico and that you would be there without your parents and that
you would have to be living with grandparents?
 
A:No. She scolded me and punished me for what we had done.
 
Q:But the question is: Were you told that if this occurred again, that
you would be – that [the complainant] would be sent back to
Mexico?
 
A:I do remember about my mother, but I don’t remember if she said
she was going to send us back to Mexico.

          . . . .
 
Q:So, during this particular episode . . . what, if anything, did your
mother say about you or [the complainant] or both of y’all being
sent back to Mexico?

          . . . .
 
A:Well, what she told me was or asked me was who had showed me
those things. But I don’t believe that she said she would send us
to Mexico.
 
Q:Did she say that she would send you to Mexico if something
happened again?
 
          A:      No.

          During her trial testimony, the complainant denied that her mother had ever
threatened to send her to Mexico. Huerta also denied that she ever threatened to send
the complainant to Mexico for any reason.
          Appellant, who was 19 years old at the time of trial, testified that he was never
alone with the complainant on the day of the assault and never molested the
complainant or touched her in an improper manner.
Evidence of the Complainant’s Prior Conduct
          In his first point of error, appellant argues that the trial court erred in excluding
evidence of the complainant’s prior “sexual behavior.” Specifically, appellant argues
that the trial court should not have excluded the transcript of Smith’s interview of the
complainant’s brother, A.G., because A.G.’s statements to Smith concerning alleged
“sexual behavior” between the complainant and A.G. were necessary to rebut or
explain the medical evidence offered by the State.
          In a prosecution for aggravated sexual assault, evidence of specific instances
of an alleged victim’s past sexual behavior is not admissible, unless such evidence
is necessary to rebut or explain medical evidence offered by the State and the
probative value of such evidence outweighs the danger of unfair prejudice. See Tex.
R. Evid. 412(b)(2)(A), (b)(3). We apply an abuse-of-discretion standard of review
to a trial court’s evidentiary rulings. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997); Pierre v. State, 2 S.W.3d 439, 442 (Tex. App.—Houston [1st Dist.]
1999, pet. ref’d). Here, the trial court did not specify the basis for its ruling to
exclude the transcripts of Smith’s interview of A.G.
          Appellant contends that the evidence sought to be admitted, specifically the
statements concerning alleged “sexual behavior” between the complainant and A.G.
contained in the transcript of Smith’s interview of A.G., would have rebutted or
explained the medical evidence offered by the State. Appellant argues that A.G.’s
statements in his interview indicated a history of “sexual behavior” between A.G. and
the complainant, which would have rebutted or explained the medical testimony,
offered by the State, from the medical professionals who examined the complainant
and observed signs of penetrating trauma to her hymen.
          However, as appellant concedes in his brief, A.G. did not state in his interview
that he and the complainant ever engaged in sexual intercourse. Moreover, A.G.
denied that he ever touched or penetrated the complainant’s “private parts” and
denied that he and the complainant ever removed their clothing while doing the “adult
things.” Thus, based on the record presented, we conclude that the evidence
appellant sought to have admitted would not have rebutted or explained the specific
medical evidence and testimony concerning the trauma to the complainant’s hymen. 
See Arnold v. State, 679 S.W.2d 156, 159 (Tex. App.—Dallas 1984, pet. ref’d)
(holding evidence of other sexual intercourse by complainant five or six days before
charged offense not admissible to rebut medical evidence of vaginal tearing when
expert testimony indicated such tearing would heal within 36 hours).
          Accordingly, we hold that the trial court did not err in excluding the interview
statements made by A.G. and offered by appellant under Rule 412(b)(2)(A).
          We overrule appellant’s first point of error.
Evidence of Motive or Bias
          In his second point of error, appellant argues that the trial court erred in
excluding A.G.’s statements to Smith regarding the alleged “sexual behavior”
between A.G. and the complainant because such statements demonstrated the
complainant’s bias and her motive to accuse appellant of sexually assaulting her. 
Appellant argues that, if admitted, A.G.’s statements “would have shown that [the
complainant] had been disciplined in the past for improper sexual behavior with
[A.G.],” and were “probative of ‘motive’ to shift blame from her and [A.G.].”
          In a prosecution for aggravated sexual assault, evidence of specific instances
of an alleged victim’s past sexual behavior is not admissible, unless such evidence
“relates to the motive or bias of the alleged victim” and the probative value of such
evidence outweighs the danger of unfair prejudice. See Tex. R. Evid. 412(b)(2)(C),
(b)(3). A trial court’s decision to exclude such evidence is reviewed under an abuse-of-discretion standard. Mozon v. State, 991 S.W.2d 841, 846-67 (Tex. Crim. App.
1999); Miles v. State, 61 S.W.3d 682, 687 (Tex. App.—Houston [1st Dist.] 2001, pet.
ref’d). As noted above, the trial court excluded the transcript of Smith’s interview of
A.G. without specifying the basis for its ruling.
          Evidence that meets one or more of the criteria of Rule 412(b)(2) may still
constitute inadmissible hearsay. Miles, 61 S.W.3d at 687; Burks v. State, 40 S.W.3d
698, 701 (Tex. App.—Waco 2001, pet. ref’d). A.G.’s statements to Smith in his out-of-court, unsworn interview were hearsay and, absent some showing of an exception
to the general prohibition against hearsay, were inadmissible, notwithstanding the fact
that they may have been probative under rule 412(b)(2). See id.; Tex. R. Evid.
801(d), 802.
          At trial, when questioned by appellant’s counsel, A.G. somewhat equivocally
denied that his mother had ever threatened to send him and the complainant to
Mexico. Based on this testimony, A.G.’s statements to Smith that his mother had
threatened to send A.G. and the complainant to Mexico might have been admissible,
if at all, as a prior inconsistent statement. See Tex. R. Evid. 613(a).
          However, in his offer of proof, appellant offered merely the transcripts of the
interviews of the complainant and her brother. He did not seek to question, outside
the presence of the jury, the complainant, her brother, or her mother concerning the
occurrence of any “sexual behavior” between A.G. and the complainant. Thus, we
have no record before us setting forth how these witnesses, if questioned on this
issue, would have testified. See Tex. R. Evid. 103(b). Accordingly, appellant has not
shown how A.G.’s otherwise inadmissible hearsay statements to Smith concerning
the alleged sexual behavior between A.G. and the complainant would have been
admissible. Such statements, according to appellant, formed the basis for the
complainant’s mother’s alleged threat to send A.G. and the complainant to Mexico
and provided the complainant with a motive to fabricate her allegations against
appellant. Because appellant failed to present a sufficient offer of proof to establish
that A.G.’s hearsay statements to Smith about his alleged “sexual behavior” with the
complainant were admissible, the trial court did not err in excluding such statements.
          Based on the record presented, we hold that the trial court did not abuse its
discretion in excluding the statements made by A.G. to Smith concerning the alleged
“sexual behavior” between the complainant and A.G.
          We overrule appellant’s second point of error.
Right of Confrontation
          In his third and fourth points of error, appellant contends the trial court violated
his constitutional right to confront and cross-examine the complainant


 when it
prevented him from cross-examining the complainant and her brother concerning the
alleged “sexual behavior” between them.
          As noted by the Supreme Court of the United States, “[t]he main and essential
purpose of confrontation is to secure for the opponent the opportunity of cross-examination.” Delaware v. Van Arsdall, 475 U.S. 673, 680, 106 S. Ct. 1431, 1435
(1986); see also Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000) (citing
Davis v. Alaska, 415 U.S. 308, 315, 94 S. Ct. 1105, 1110 (1974)); Shelby v. State, 819
S.W.2d 544, 546 (Tex. Crim. App. 1991) (citing Douglas v. Alabama, 380 U.S. 415,
418 85 S. Ct. 1074, 1076 (1965)). The Confrontation Clause has been made
applicable to the States through the Fourteenth Amendment.


 Shelby, 819 S.W.2d at
546 (citing Pointer v. Texas, 380 U.S. 400, 403, 85 S. Ct. 1065, 1068 ( 1965)).
          Cross-examination is a cornerstone of the criminal trial process and, as such,
a defendant must be given wide latitude to explore a witness’s story, to test the
witness’s perceptions and memory, and to impeach his or her credibility. Guitierrez
v. State, 764 S.W.2d 796, 799 (Tex. Crim. App. 1989). It is well-settled that the right
of confrontation may be violated when a trial court improperly limits cross-examination. Van Arsdall, 475 U.S. at 679, 106 S. Ct. at 1435; Hurd v. State, 725
S.W.2d 249, 252 (Tex. Crim. App. 1987). As further noted by the Supreme Court:
Cross-examination is the principal means by which the believability of
a witness and the truth of his testimony are tested. . . . A more particular
attack on the witness’ credibility is effected by means of cross-examination directed toward revealing possible biases, prejudice, or
ulterior motives of the witnesses as they relate directly to issues or
personalities in the case at hand. The partiality of a witness is subject
to exploration at trial, and is “always relevant as discrediting the witness
and affecting the weight of his testimony.” . . . We have recognized that
the exposure of a witness’ motivation in testifying is a proper and
important function of the constitutionally protected right of cross-examination.

Davis, 415 U.S. at 316-17, 94 S. Ct. at 1110 (citations omitted).
          However, a trial court retains wide latitude to impose reasonable limits on
cross-examination based on, among other things, concerns about harassment,
prejudice, confusion of the issues, the witness’s safety, or interrogation that is
repetitive or only marginally relevant. Van Arsdall, 475 U.S. at 679, 106 S. Ct. at
1435; see Lopez, 18 S.W.3d at 222. Each Confrontation Clause issue must be
considered on a case-by-case basis, and the defendant’s right to cross-examine the
witness must be weighed against any risk factors associated with the admission of the
evidence. Lopez, 18 S.W.3d at 222. “In weighing whether evidence must be admitted
under the Confrontation Clause, the trial court should balance the probative value of
the evidence sought to be introduced against the risk its admission may entail.” Id. 
In cases involving a charge of aggravated sexual assault, evidence of the prior sexual
conduct of the complainant is admissible only when “its probative value outweighs
the danger of unfair prejudice.” Tex. R. Evid. 412(b)(3).
          Here, appellant complains of the trial court’s decision to prohibit him from
cross-examining the complainant and her brother concerning the alleged “sexual
behavior” between the complainant and her brother, as described by the
complainant’s brother during his interview with Smith. In making its decision to
permit or prohibit appellant’s counsel from engaging in such cross-examination, the
trial court was authorized to allow this line of questioning only if the probative value
of any evidence obtained would outweigh its potential prejudicial effect. Id.
          We note that, based on the record presented, the line of cross-examination
sought by appellant would not have explained a motive for the complainant, who was
eight or nine years old at the time of the sexual assault, to fabricate either the explicit
details of the charged assault, as described during her direct testimony, or the
assertion that appellant assaulted her on four different occasions at his apartment and
in Mexico. As noted above, any evidence likely to be obtained from such questioning
would not have rebutted or explained the specific medical evidence and testimony
presented by the State. Additionally, by failing to question the complainant or her
brother, in an offer of proof, about the alleged “sexual behavior,” appellant has not
shown how such questioning would have impeached the complainant’s credibility
before the jury. Tex. R. Evid. 103(b). Here, the trial court could have reasonably
concluded that the risk that any evidence likely to be obtained from such questioning
would unduly prejudice and confuse the jury was high. See Lopez, 18 S.W.3d at 226.
          Based on the record presented, we hold that the trial court did not violate
appellant’s constitutional rights, under either the United States or Texas constitutions,
to confront the complainant about the alleged “sexual behavior” described by A.G.
in his statements to Smith.
          We overrule appellant’s third and fourth points of error.
 

Conclusion
          We affirm the judgment of the trial court.
 

                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Hedges, Jennings, and Keyes.

Do not publish. Tex. R. App. P. 47.2(b).