**Dennis HOOD, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 07–96–0230–CR.

Court of Appeals of Texas, Amarillo.

April 29, 1997.

Candace Norris, Law Offices of Candace Norris, Canyon, for appellant.

Rebecca King, Bruce P. Sadler, Potter County District Attorney, Amarillo, for appellee.

Before QUINN and REAVIS, JJ., and REYNOLDS, Senior Justice.*

QUINN, Justice.

Appellant, Dennis Hood, appeals his conviction for aggravated sexual assault. Through three points of error, he asks whether the trial court reversibly erred in 1) refusing to admit a copy of his travel log indicating his location on the date of the assault, 2) refusing to permit admission of testimony regarding a specific instance of the

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex.

Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1997).

victim's prior sexual activity, and 3) commenting upon the weight of the evidence by refusing to admit the aforementioned evidence. We answer the second query yes and reverse and remand the cause for new trial.

## Background

The State indicted appellant for committing aggravated sexual assault upon L.L.S.R., a female of thirteen years. At trial, L.L.S.R. testified that appellant was dating her cousin at the time. Furthermore, her cousin lived with L.L.S.R. and the latter's mother. Thus, L.L.S.R. knew appellant.

On the day in question, July 16, 1994, appellant allegedly entered L.L.S.R.'s home while she was alone. He approached and touched her breasts. She then moved away and entered her own room. Appellant allegedly followed and directed her to remove her clothing. She refused. Thereafter, he purportedly "ripped" her shirt off, pulled down her shorts, pushed her onto a bed, "got on top of" her, and inserted his penis into her vagina. No one was told of the assault until October of 1994.

Though appellant testified and denied the charge, the jury apparently believed L.L.S.R. Thus, it found him guilty and assessed punishment at 65 years imprisonment.

## Point of Error Two

In his second point of error, appellant argues that the court erred in refusing him permission to question Becky O'Neill, a registered nurse who examined the complainant, about a prior instance of sexual intercourse involving L.L.S.R.[1] The State called O'Neill and asked her to testify about her examination of the girl. Thereafter, O'Neill related that she had found two "well-healed" tears in L.L.S.R.'s hymen. According to the witness, "[t]hey hadn't happened within 72 hours but they were deep enough that they had happened ... sixty days or more" before the examination. Moreover, the tears evinced penetration of the vagina with some object;

though what the object was, the witness did not know. On cross-examination, appellant asked whether it was "important to you to know ... that [the] person has had sexual intercourse with" someone other than the accused. O'Neill answered "[y]es, sir, I do ask that question." Then, he solicited permission from the court to inquire whether such questions were propounded to L.L.S.R. and, if so, what her answers were. "If it was part of what she was looking at in her examination, that is part of the examination ... I want to ask those questions," appellant urged. So too did he assert that "[t]his witness is going to testify ... that she asked her and she told her she had one prior sexual episode *which would explain and would be a plausible explanation of the tears.*" (Emphasis added). The court "overrule[d]" his request, "[g]iven the age of the child."

Nevertheless, opportunity was given appellant to "make a record" of the witness' proposed testimony outside the presence of the jury. While pursuing that chance, he queried: "[d]id you ask her when the last time she had intercourse was?" O'Neill replied: "I remember [L.L.S.R.] telling me possibly back in 1993, she said she thought that she had." So too did the witness concede that the prior instance of sexual intercourse could have caused the tears she discovered.

## Standard of Review

Whether to admit a particular piece of evidence is a matter which lies within the trial court's considered discretion. Moreover, we will not interfere with the exercise of that discretion unless we find it to have been abused. And, that occurs when the trial court so deviates from applicable guidelines and principles that its decision falls outside the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

Next, since the controversy at bar entails Texas Rule of Criminal Evidence 412(b), we turn to that rule to determine the pertinent guidelines. Therein, it is stated that:

---

1. Appellant initially contended that the State had "opened the door" to such testimony since it commented that L.L.S.R. was pregnant at the time of trial. The trial court disagreed. Nevertheless, appellant was given leeway to examine her about the pregnancy and the baby's father. During same, L.L.S.R. admitted that appellant was not its father.

[i]n a prosecution for ... aggravated sexual assault ... evidence of specific instances of an alleged victim's past sexual behavior is ... not admissible, unless:

(1) such evidence is admitted in accordance with paragraphs (c) and (d) of the rule;

(2) it is evidence (A) that is necessary to rebut or explain scientific or medical evidence offered by the state; (B) of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged; (C) that relates to the motive or bias of the alleged victim; (D) is admissible under Rule 609; or (E) that is constitutionally required to be admitted; and,

(3) its probative value outweighs the danger of unfair prejudice.

Simply put, if the evidence falls within any of the exceptions itemized in Rule 412(b)(2) and its probative value outweighs the danger of unfair prejudice, it is admissible. *Boyle v. State,* 820 S.W.2d 122, 148–49 (Tex.Crim.App. 1989), *cert. denied,* 503 U.S. 921, 112 S.Ct. 1297, 117 L.Ed.2d 520 (1992).

### *Application of Standard to Circumstances at Bar*

■ Appellant informed the trial court that he desired to use the evidence of prior sexual behavior to "explain" the "well-healed" tears found in L.L.S.R.'s hymen. More importantly, paragraph (b)(2)(A) of Rule 412 expressly permits use of the evidence for such a purpose. *Reynolds v. State,* 890 S.W.2d 156, 157 (Tex.App.—Texarkana 1994, no pet.) And, though there may be danger of unfair prejudice or stigma by informing the jury of the sexual escapades of a child, that prejudice did not outweigh the probative value of the evidence for several reasons. First, the trial court admitted evidence of L.L.S.R.'s pregnancy at the tender age of fifteen. So too did it accept evidence regarding her unmarried status and her intent not to marry the baby's father. That

evidence was rife with its own insinuations or taint whether warranted or not. In other words, the risk prejudice, if any, contemplated by Rule 412(b)(3) was already interjected into the fray once the State called L.L.S.R. as a witness. Second, the State endeavored to use the tears to prove that *appellant* penetrated L.L.S.R.'s vagina. Yet, appellant denied ever sexually assaulting the child. One way of reinforcing that testimony would be to explain the cause of those tears. *See Boyle v. State,* 820 S.W.2d at 149 (indicating that the similarity in circumstances between the prior conduct and that assigned to the defendant affects the probative value of the evidence). Appellant attempted to do so with evidence of prior sexual conduct which, according to O'Neill, could have caused the hymnal trauma. Third, the date on which the prior sexual act occurred coincided with O'Neill's estimation of when the "well-healed" tears were inflicted, that is, at least sixty days before the examination. Thus, the temporal proximity of the prior act did not militate against the probative value of the evidence but, rather, bolstered it. *See id.* (indicating that proximity in time is a factor used in assessing the probative value of the evidence).

■ Finally, the situation at bar is quite akin to that described in *Reynolds.* In both cases, the defendant desired to present evidence of specific instances of prior sexual conduct. *Reynolds v. State,* 890 S.W.2d at 157. Furthermore, in both, the appellant sought to do so in effort to explain away medical testimony offered by the State. However, in both cases the only reason given by the trial court for refusing to admit the evidence pertained to the age of the youth.[2] Nevertheless, the Texarkana appellate court indicated that the child's age has little to do with Rule 412(b)(2)(A). *Id.* at 157 n. 1 (noting that age was implicated in subparagraph (e) of Rule 412 but that subparagraph (e) has been disapproved by the legislature). We agree; if the evidence otherwise satisfies the requirements of 412(b)(2)(A), the child's

---

**2.** In *Reynolds,* the court excluded the matter because " '[t]he kid is not old enough.' " *Reynolds v. State,* 890 S.W.2d 156, 157 (Tex.App.— Texarkana 1994, no pet.). Here, the court rejected it "[g]iven the age of the child."

young age is irrelevant.[3] So too do we conclude, like the court in *Reynolds*, that the evidence proffered by the appellant met the demands of Rule 412(b)(2)(A), was admissible, and was wrongfully excluded. And, for the same reasons mentioned in *Reynolds*, we finally hold that its exclusion was harmful.[4]

■ In holding as we do, we do not ignore the State's belief that "[i]t was incumbent upon appellant to establish through [L.L.S.R.] the exact nature of her prior sexual behavior to determine whether it was of such a nature that it would have produced the genital tears found." Yet, no authority was cited for the State's implicit proposition that only the victim can testify to prior instances of sexual conduct. Moreover, we know of no such rule. Indeed, it is conceivable that such evidence could be proffered through the medical practitioners who examined the victim. O'Neill herself agreed that history of prior sexual activity is "important" to those examining a victim of sexual assault, and the data imparted by the victim could be admissible under Texas Rule of Criminal Evidence 803(4). The latter permits use of a victim's statements made to medical personnel for purposes of diagnosis or treatment. *See, e.g., Torres v. State*, 807 S.W.2d 884, 886 (Tex.App.—Corpus Christi 1991, pet. ref'd).

Additionally, in prohibiting appellant from developing the evidence through O'Neill, it is quite reasonable to assume that the court would have also refused him opportunity to propound similar questions to L.L.S.R. And, given that the issue was presented and preserved through O'Neill, we see little reason for requiring appellant to journey with another witness down a path which was already judicially blocked.

In sum, the trial court decision failed to comport with applicable guidelines and fell outside the zone of reasonable disagreement. Thus, it constituted a harmful instance of abused discretion.

### Points of Error One and Three

Reaching the conclusion that we do vis-a-vis Point Two obviates our need to address the remaining points of error. However, since questions regarding the use of copies in lieu of original exhibits (the substance of Point One) may arise at the new trial, we note that Texas Rule of Criminal Evidence 1003 authorizes the use of copies to the same extent as originals. This is so unless one questions their authenticity or illustrates that it would be unfair to admit the duplicates. TEX.R.CRIM. EVID. 1003. And, since the rule mentions nothing about requiring proof that the originals are unavailable, we decline the State's invitation to read such into it.

■ Indeed, accepting the State's invitation would be tantamount to converting 1003 *into nothing more than the common law* "best evidence rule." But, that would contradict the purpose underlying 1003 since the latter was enacted "as an exception to the best evidence rule." 6 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 1003.02[1] (2d ed 1997).[5] Simply put, when the only concern is with getting the words or contents of the document before the fact finder, then duplicate of the original serves as well as the original. *Id.* at § 1003App.01[2] (Advisory Committee Note to Original Rule). As long as no one legitimately questions authenticity or establishes unfairness, we see no reason to deviate from the logic endorsed by *Weinstein*.

We reverse the judgment and remand the cause for further proceedings.

REAVIS, J., and REYNOLDS, Senior Justice, concurring.

3. Though we are unable to readily think of a situation wherein age would be a factor, we stop short of concluding that age can never be considered in balancing the probative value of the evidence against its prejudicial effect.

4. The *Reynolds* court determined that harm was present since the evidence tended to refute the allegations of the State and explain the presence of the trauma. *Reynolds v. State*, 890 S.W.2d at 157. Moreover, because of the somewhat self-contradictory nature of L.L.S.R.'s testimony concerning the day, time, and events surrounding the alleged assault, we also hesitate to say that the excluded evidence would have had no impact on the jury's verdict.

5. Though the treatise cited dealt with the Federal counterpart to Texas Rule of Criminal Evidence 1003, the former is identical to the latter. Given this, it is quite reasonable to use information regarding the former as guidelines for interpreting the latter.

CHARLES L. REYNOLDS, Senior Justice, concurring.

Concurring with the rationale expressed in the majority opinion for sustaining appellant Dennis Hood's second point of error, which requires a reversal and remand, I would also sustain, as another reason for the reversal and remand, appellant's first point of error. By that point, he contends the trial court erred in refusing to admit into evidence copies of the log sheets he made in his employment as a truck driver.

Appellant was charged with the offense of aggravated sexual assault, alleged to have occurred in Amarillo, Potter County, on or about the 12th day of July, 1994. Although the complainant testified that she did not remember, and had not told anyone, the date in July the alleged offense occurred, she fixed the date as the 16th day of July, 1994 in a statement she made in another hearing. When appellant, employed as a truck driver who was was required to fill out log sheets each day, offered copies of the log sheets he had made at the time the complainant said the offense occurred to evince he was not then in Amarillo, the State objected because they were not the originals. The court sustained the objection, thereby excluding the evidence.

On appeal, the State's justification for the exclusion is the best evidence rule, *i.e.*, the original must be produced or its absence explained, as articulated in *Ortiz v. State*, 651 S.W.2d 764, 766 (Tex.Cr.App. 1983). However, the *Ortiz* opinion was issued three years before the adoption of Texas Rules of Criminal Evidence 1003, which, as the majority opinion documents, was enacted as an exception to the best evidence rule. Thus, the State's objection was not a valid one, and since the State did not question the authenticity of the copies, the court erred in sustaining the objection.

The copies of the log sheets, bearing on the question whether appellant was present at the scene of the alleged offense, were an essential component of his plea of not guilty. In my view of the record, the exclusion of the evidence not only might possibly have prejudiced the jurors' decision-making process, but was of such magnitude that it disrupted the jurors' orderly evaluation of the evidence. *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Cr.App. 1989). Resultantly, I cannot say beyond a reasonable doubt that the exclusion of the evidence made no contribution to appellant's conviction. Tex. R. App. P. 81(b)(2).

Accordingly, I would also sustain appellant's second point of error as a reason to reverse the judgment and remand the cause to the trial court.

REAVIS, J., concurring.