**Foster Lynn MILES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–00–01146–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 8, 2001.

Rehearing Overruled Nov. 29, 2001.

Tom Zakes, Leora Teicher Kahn, Houston, for Appellant.

Dan McCrory, Assistant District Attorney, Houston, for the State.

Panel consists of Justices COHEN, HEDGES, and TAFT.

## OPINION

TIM TAFT, Justice.

Appellant, Foster Lynn Miles, was tried for two counts of sexual assault of A.M., a child: one by fondling, and one by intercourse. A jury acquitted appellant of fondling, but convicted appellant of intercourse, and assessed his punishment at 12 years in prison. We address whether the trial court erred by denying appellant's request to present evidence of the complainant's prior statements regarding sexual intercourse with someone other than appellant. We reverse.

### Facts

Appellant was dating A.M.'s mother. When A.M. was nine years old, appellant moved in with A.M., her mother, and the rest of her family. On January 1, 2000, when A.M. was 14 years old, A.M.'s family had a New Year's party that lasted until 3:00 a.m. in the morning.

A.M. testified that, after the party, appellant entered the living room and turned out all the lights. Appellant removed A.M.'s shorts and put his finger inside her vagina. Appellant then unzipped his pants, lay on top of her, and inserted his penis in her vagina.

A.M. told her mother about the incident several weeks later. Appellant denied all of the allegations and left the house immediately after A.M.'s mother confronted him. At trial, appellant again denied any type of inappropriate behavior with A.M.

A.M. went to the Children's Assessment Center where she was interviewed and medically examined on February 2, 2000. A.M. told the doctor that appellant had touched her vagina once with his penis and, on multiple occasions, with his hands and mouth. Photographs from the physical examination revealed several transections, or cuts, in the hymen at the three o'clock, four o'clock, and seven o'clock positions. These were healed tears through the hymen all the way down to the base.

According to the expert witness, Dr. Rebecca Girardet, the healed cuts on the hymen revealed they probably did not occur within the previous day or two prior to the examination. Dr. Girardet could not tell exactly what caused the cuts in A.M.'s hymen or exactly when they occurred. Dr. Girardet stated, however, that the type of healed hymenal transections observable on A.M. almost never occur in cases of oral sex or fondling and most likely occurred because of penile penetration. Dr. Girardet also stated that the medical evidence was consistent with what A.M. told her.

Before trial, the State presented a motion in limine prohibiting appellant from discussing reputation or opinion evidence of A.M.'s past sexual behavior or specific instances of A.M.'s past sexual behavior. The trial court granted that motion.

During opening statement, the State argued that the medical evidence would corroborate A.M.'s testimony. Defense counsel then asked to make an opening statement explaining the medical evidence could have been caused by someone other than appellant:

> DEFENSE COUNSEL: It's because the State has referred to it during their opening statement, we need to make an opening statement at which point we will apprise the jury there will be evidence that there is another reason why there is evidence of penetration of this child and it is based on having sex with a person other than Foster Lynn Miles.
> TRIAL COURT: That's denied.

During cross-examination of A.M., defense counsel mentioned the subject:

> DEFENSE COUNSEL: At this point I didn't want to go into the allegations about her having sex with other people, that's—
> TRIAL COURT: At this point that's denied.

During direct examination of Dr. Girardet, defense counsel objected to the entire line of questioning because the trial court was not permitting testimony that A.M. had sexual intercourse with another individual:

> DEFENSE COUNSEL: If we are not permitted by the Court to bring in testimony to show that there is an alternate explanation for the damage to this child we would—to permit this evidence to come in in the first place would violate our Sixth Amendment and Article 1 Section 10 rights to confront testimony because of that and because of the provisions of the Rules of Evidence for 412—because we would not be permitted to go into those areas, if we would not be permitted to go into those areas it would violate Mr. Miles' Constitutional rights to permit the State to bring in evidence, that although we have the evidence available to rebut we would not be permitted to rebut. It would be a confrontation violation and because of that we would object to the evidence coming in in the first place.

> \* \* \*

> TRIAL COURT: Okay. I'm going to allow the medical testimony, her records with regard to what the exam showed, so I guess your objection is overruled.

Defense counsel then called Vanessa Teague, a cousin of A.M. During direct examination, defense counsel attempted again to ask questions about statements A.M. may have made about sexual activity:

> DEFENSE COUNSEL: The State having introduced evidence regarding likely penetration of [A.M.] at this point we would request an opportunity to go into the area of the admissions made by the complainant to this witness regarding previous consensual sexual activity by the complainant.
> TRIAL COURT: At this point I am not going to allow that in front of the jury,

but I will certainly listen to it outside the presence of the jury so I can make a decision ultimately after I hear everything else I can look at it.

Defense counsel then requested permission to call additional witnesses who could testify that A.M. made statements to them regarding sexual relations with a person named Timmy. The court then conducted an in-camera hearing with A.M. Neither the prosecutor nor defense counsel were present, and the record has been sealed pursuant to Rule 412(d). The court asked A.M. if she knew anybody by the name of Timmy. A.M. responded that she did and that she had never had sexual intercourse with him, but that she had told her cousin Vanessa a different story:

A.M.: Well, my cousin Vanessa, she asked about one of the marks that Foster had made on my neck but she didn't say Foster, she asked, who did it? And I didn't know what to say because I didn't want to tell anybody about it and I was scared, so I figured I'd just name somebody and they didn't know anybody named Timmy so I said, yeah, me and Timmy had sex. And I did that because she put me on the stand [sic], and I don't know—

TRIAL COURT: So you told her that you and Timmy had sex?

A.M.: Yes.

TRIAL COURT: It is true you had sex?

A.M.: No, ma'am.

TRIAL COURT: Are you telling me you lied to Vanessa?

A.M.: Yes.

TRIAL COURT: Is there anybody else you might have said that to?

A.M.: No.

TRIAL COURT: Other than Foster, have you been sexually active with anybody, even since then?

A.M.: No.

TRIAL COURT: So at the time that the doctor examined you, Foster was the only person that had ever tried to have—to put his penis in your vagina?

A.M.: Yes, ma'am.

TRIAL COURT: Okay. Anything else that you want to tell me about any of that?

A.M.: No, ma'am.

TRIAL COURT: Okay. We are done.

The court determined that the evidence would be more prejudicial than probative and denied the request. Defense counsel's request to call witnesses was based upon Texas Rule of Evidence 412(b)(2)(A) to rebut or explain scientific or medical evidence offered by the State. Counsel also argued that the evidence was constitutionally required under Article 1, Section 10 of the Texas Constitution and under the Sixth Amendment of the United States Constitution. The trial court overruled those arguments.

Defense counsel then made a bill of exceptions consisting of the testimony of Vanessa Teague and Larry Teague, both cousins of A.M. Vanessa testified she had spoken with A.M. on December 27, 1999, when A.M. described in great detail that she had sex with Timmy and he had placed a "hickey" on her neck. Timmy is a friend of A.M.'s uncle. Vanessa also testified that A.M. had been "obsessed" with Timmy, had slept with his shoes and his shorts and also had posters and pictures with his name all over the wall. Larry Teague testified that, in the summer of 1999, A.M. stated she was having sexual intercourse with Timmy.

The defense had also previously called Twyla Teague, A.M.'s aunt. Twyla testified A.M.'s character for truthfulness and veracity was "not always good." Having been equally well-acquainted with appellant, Twyla stated that appellant was unequivocally a truthful person. A.M.'s un-

cle, J.R. McCabe, testified he had known A.M. since birth and regarded her character for truthfulness and veracity as "not very truthful." McCabe also stated unequivocally that appellant is very truthful. *Melanie McCabe,* A.M.'s cousin testified that A.M. always looked up to appellant as a father figure. Her stated opinion of A.M.'s character for truthfulness was, "I guess I would say it was bad." Melanie stated that her opinion of appellant's character for truthfulness and veracity as a "good opinion."

## Specific Instances of Past Sexual Behavior

In issues one through four, appellant argues his constitutional confrontation and due process rights were violated. In issues five and six, appellant contends the trial court erred by denying his request to present evidence of A.M.'s prior statements regarding sexual intercourse with Timmy, in violation of Texas Rules of Evidence 412(b)(2)(A) and 412(b)(3). Rule 412(b)(2)(A) provides:

> In a prosecution for sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, *unless it is evidence that is necessary to rebut or explain scientific or medical evidence offered by the State.* (emphasis added).

Tex.R. Evid. 412(b)(2)(A).

Rule 412(b)(3) provides:

> In a prosecution for sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless its probative value outweighs the danger of unfair prejudice.

Tex.R. Evid. 412(b)(3).

### A. Evidence Necessary to Rebut or Explain Scientific or Medical Evidence

 The defense attempted to offer, through A.M. and through the Teagues,

that A.M. had sex with Timmy. This evidence was offered to explain or rebut the only medical evidence presented at trial, Dr. Girardet's report, which stated that A.M. had sexual intercourse sometime prior to the examination.

A similar situation arose in *Reynolds v. State,* 890 S.W.2d 156 (Tex.App.—Texarkana 1994, no pet.). In *Reynolds,* the medical report noted that the "vaginal introitus appears to be slightly stretched," and the complainant "denies any sexual abuse by other people or any other consentual [sic] sexual intercourse." *Id.* at 157. The defense offered to prove through the child's testimony and the child's letter that the child had been sexually abused by another man. *Id.* The trial court disallowed the evidence, and the appellate court reversed, stating that this evidence was essential to rebut the medical evidence.

The Amarillo court followed the *Reynolds* court in *Hood v. State* in concluding that probative value outweighed prejudicial effect for several reasons. 944 S.W.2d 743, 746 (Tex.App.—Amarillo 1997, no pet.). The most important was that the State wanted to use the tears to prove the defendant penetrated the complainant's vagina, whereupon the defendant denied ever sexually assaulting the child. *Id.* The *Hood* court held that one way for the defense to reinforce its testimony was to explain the cause of the tears. *Id.* (citing *Boyle v. State,* 820 S.W.2d 122, 149 (Tex. Crim.App.1989)). The attending nurse's testimony that the complainant told of sex with someone other than the defendant was admitted over a Rule 412 objection. *Hood,* 944 S.W.2d at 747 (citing Tex.R. Evid. 803(4)).

The State cites *Burks v. State,* 40 S.W.3d 698, 701 (Tex.App.—Waco 2001, no pet.), for the proposition that evidence sat-

isfying Rule 412 may still constitute inadmissible hearsay. This may be true of A.M.'s statements to her cousins, the Teagues, but it does not address the testimony from A.M. herself. Defense counsel only attempted to elicit information from other sources after the trial court denied defense attempts to ask A.M. about her prior sexual history. The State does not contend that a cross-examination of A.M. would constitute inadmissible hearsay. Moreover, the in-camera hearing preserved any excluded testimony of the complainant for appellate purposes. *Wofford v. State*, 903 S.W.2d 796, 798 (Tex.App.—Dallas 1995, pet. ref'd) (citing TEX.R. EVID. 412(d)).

## B. Probative Value of Evidence Versus Unfair Prejudice

 The trial court's decision to exclude evidence as unfairly prejudicial is reviewed under an abuse-of-discretion standard. *Mozon v, State*, 991 S.W.2d 841, 846–47 (Tex.Crim.App.1999). The trial court conducted an in-camera hearing with A.M. to determine whether to allow defense counsel to question her regarding allegations about sexual activity with Timmy. A.M. stated in that hearing that she lied to Vanessa Teague about having sex with Timmy. Vanessa had asked A.M. about some marks on her neck, but A.M. was scared and thus lied to Vanessa by falsely claiming to have had sex with Timmy. A.M. also claimed to have never told anyone other than Vanessa about Timmy, but Larry Teague testified in appellant's bill of exceptions that A.M. had also told him she had sex with Timmy. After the in-camera hearing, the trial court decided that the Teagues' testimony regarding

A.M.'s prior statement about having sex with Timmy would be more unfairly prejudicial than probative.

Appellant denied having sex with A.M. The medical evidence indicated that there was "penetrating trauma" to A.M.'s vagina, and A.M. stated to the trial court that appellant was the only person with whom she had sex. As in *Hood*, A.M.'s statements that she had sex with Timmy is critical evidence. A.M. admitted she lied to Vanessa about having sex with Timmy, and the jury should have the right to weigh her credibility against that of appellant. Without such an opportunity, appellant was denied the ability to put on a defense. The excluded evidence was thus more probative than prejudicial.

## C. Resolution of Rule 412 Application

 The trial court abused its discretion by not allowing appellant to cross-examine A.M. or introduce other evidence of prior sexual history. We sustain issues five and six. Having found that appellant met an exception under Rule 412, it is unnecessary to address appellant's constitutional claims in issues one through four.[1]

## Conclusion

We reverse the judgment of the trial court and remand the cause for a new trial.

---

1. We should not reach a constitutional issue if a narrower basis for decision applies. *Sayyadi v. State*, 40 S.W.3d 722, 724 (Tex.App.—Austin 2001, no pet.) (citing *Briggs v. State*, 740 S.W.2d 803, 806–07 (Tex.Crim.App. 1987)).