In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00159-CR
______________________________


CARMON KENNEDY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 03F0041-202


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross
Dissenting Opinion by Justice Carter

O P I N I O N

          Carmon Kennedy was indicted on one count of indecency with a child by exposure,
four counts of indecency with a child by contact, and four counts of aggravated sexual
assault of a child. He entered pleas of not guilty before a jury on all counts. The jury
returned verdicts of guilty on all nine counts and assessed punishment at twelve years'
imprisonment for each of the five counts of indecency with a child, sixty years'
imprisonment for two of the aggravated sexual assault convictions, and ninety-nine years'
imprisonment for the other two aggravated sexual assault convictions. The trial court
sentenced Kennedy accordingly, ordering that the nine sentences run concurrently. 
Kennedy now appeals the trial court's judgment, contending the trial court abused its
discretion in excluding evidence of specific instances of the complainant's past sexual
behavior and in excluding hearsay concerning what the complainant had said to her friends
about needing to testify to the same stories in court. We affirm.
I.        Factual Background
          A.       A.C.'s Account
          In 1999, thirty-one-year-old Kennedy moved in with the family of eleven-year-old
A.C. in Bowie County. According to A.C., a couple of months after he moved in, Kennedy
began to come into her room at night and sexually abuse her. The abuse began with back
rubs under her shirt during which he would move to her front, fondling her breasts. He then
began to "mess[] with [her] privates," digitally penetrating her. A.C.'s family moved to
Georgia for a brief period and then returned to Bowie County. Kennedy moved back in
with the family and began to masturbate in front of A.C. and would place her hand on his
penis to masturbate him. Then the abuse progressed to oral sex and, finally, intercourse. 
A.C. testified Kennedy would ejaculate on her abdomen and clean her up with a towel. 
She testified the abuse was frequent over the years, progressing to three or four nights a
week. She testified he did not say anything to her during the abuse. After he was done,
he would kiss her on the forehead and tell A.C. that he loved her. Finally, A.C. told a
friend, who persuaded A.C. to talk to the friend's mother. The friend's mother talked A.C.
into discussing the abuse with a pastor and, later, disclosing the abuse to the police. 
          B.       State's Medical Testimony
          The trial court admitted the testimony of nurse Becky Francis. She testified that,
during her examination of A.C., she noted a well-healed laceration in A.C.'s hymen and
that this well-healed tear was consistent with A.C.'s account of abuse. 
          C.       Kennedy's Contentions
          Kennedy complains of the trial court's exclusion of certain evidence that, Kennedy
argues, would rebut or explain the State's medical evidence. According to Kennedy, the
trial court also excluded evidence that would demonstrate A.C. had a motive to fabricate
the allegations of abuse. Kennedy relies on Rules 412 and 803(24) to support his
positions. See Tex. R. Evid. 412, 803(24).  
II.       Exclusion of Evidence Concerning Past Sexual Activity
          A.       Standard of Review
          We review a trial court's decision to exclude evidence for an abuse of discretion. 
See Montgomery v. State, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990). A trial court
abuses its discretion when its decision was so clearly wrong as to lie outside that zone
within which reasonable persons might disagree. Shaw v. State, 122 S.W.3d 358, 363
(Tex. App.—Texarkana 2003, no pet.).
          B.       Evidence of Past Sexual Activity: Rule 412 Requirements
          Rule 412 of the Rules of Evidence provides the following limitation on the
admissibility of a victim's past sexual conduct:
In a prosecution for sexual assault or aggravated sexual assault,


 or attempt
to commit sexual assault or aggravated sexual assault, evidence of specific
instances of an alleged victim's past sexual behavior is also not admissible,
unless:
 
(1)such evidence is admitted in accordance with paragraphs (c)
and (d) of this rule;



 
(2)it is evidence:
 
(A)that is necessary to rebut or explain scientific or medical
evidence offered by the State;
 
(B)of past sexual behavior with the accused and is offered
by the accused upon the issue of whether the alleged victim
consented to the sexual behavior which is the basis of the offense
charged;
 
(C)that relates to the motive or bias of the alleged victim;
 
(D)is admissible under Rule 609;


 or
 
(E)that is constitutionally required to be admitted; and
 
(3)its probative value outweighs the danger of unfair prejudice.
Tex. R. Evid. 412(b). Kennedy's contentions focus on subsections (2)(A) and (2)(C), so
we will concentrate our discussion on those subsections.
          C.       Evidence of Thirty-Three Sexual Partners
          Kennedy contends the trial court abused its discretion by excluding the following
testimony from Raschella Lampkins, a former friend of A.C.: "And [A.C.] just -- I said, what
about you, and she said, well, I lost [my virginity] when I was thirteen, and I've had sex with
thirty-three guys. That's what she told me." Lampkins testified A.C. did not specify a time
frame during which she had these thirty-three partners. A.C. denied ever having made
these statements to Lampkins. 
                     1.       Kennedy's Argument
          Kennedy contends this testimony would rebut or explain the State's medical
testimony from Francis that the well-healed tears in A.C.'s hymen are consistent with
abuse. Kennedy relies on this Court's decision in Reynolds v. State, 890 S.W.2d 156 (Tex.
App.—Texarkana 1994, no pet.), to support his contention the trial court abused its
discretion by excluding such evidence. In Reynolds, the state introduced medical evidence
that the victim's vaginal opening appeared to be slightly stretched. Id. at 157. The state's
medical report also included the victim's denial of any other sexual abuse or consensual
sexual activity. Id. Employing Rule 412, Reynolds sought to question the complainant
regarding three prior sexual partners and to introduce a letter from the complainant to her
grandmother documenting years of sexual abuse by another man. Id. Reynolds argued
that this evidence would rebut or explain the state's medical evidence supporting the
victim's allegations. Id.
          Concluding that the excluded evidence would explain the state's evidence of vaginal
trauma and would rebut the complainant's denial of any prior sexual abuse or activity, this
Court held that the trial court did abuse its discretion by excluding this evidence under
Rule 412 and that the error was not harmless. See id. at 157–58. This Court reversed the
conviction and remanded the case for a new trial. Id. at 158. 
          Further, in Hood v. State, 944 S.W.2d 743 (Tex. App.—Amarillo 1997, no pet.), the
state introduced medical evidence that established two, well-healed tears in the
complainant's hymen. Id. at 745. The tears appeared to have occurred "sixty days or
more" before examination. Id. The tears, according to the state's witness, demonstrated
the complainant's vagina had been penetrated. Id. On cross-examination, defense
counsel learned the witness had inquired into the complainant's sexual history. Id. 
Counsel then sought, but was denied, permission from the trial court to cross-examine the
state's witness on whether the complainant had disclosed any prior sexual activity. Id.
          Outside the presence of the jury, defense counsel made his offer of proof, eliciting
testimony from the state's witness that the complainant "thought that she had" sexual
intercourse. Id. The court concluded that any risk of prejudice contemplated by Rule 412
was already interjected into the evidence before the jury through evidence of the
complainant's pregnancy at age fifteen and her unmarried status. Id. at 746. Additionally,
the state had relied heavily on the evidence of vaginal tears to prove Hood had penetrated
the complainant's vagina. Id. Relying on Reynolds and discounting the element of age
into the Rule 412 balancing test, the court held that the prejudicial effect of the excluded
evidence did not outweigh the probative value the evidence would offer and that the
exclusion of such evidence was harmful error. Id. at 747.
          In Miles v. State, 61 S.W.3d 682, 683–84 (Tex. App.—Houston [1st Dist.] 2001, pet.
ref'd), the state introduced medical evidence there were a number of healed tears to the
complainant's hymen. While the doctor was unable to conclude exactly what caused the
tears and when they occurred, she did testify the tears were more than a few days old,
were of the type that almost never occur in cases of oral sex or fondling, and were most
likely the result of penile penetration. Id. at 684. The doctor further testified the tears were
consistent with the account the complainant told to her. Id.
          Defense counsel sought permission to question the complainant regarding
statements she had made to her cousin to the effect that she had sexual intercourse with
an individual named Timmy. Id. at 685. During the trial court's in camera investigation, the
complainant denied having had sex with Timmy, but admitted she had told her cousin
otherwise. Id. After the trial court elicited the complainant's statement that she had lied
to her cousin and that the appellant was the only person with whom she had had
intercourse at the time of her examination, the trial court determined the evidence would
be more prejudicial than probative and disallowed any questioning on the issue of past
sexual conduct with Timmy. Id. Defense counsel then made a bill of exceptions containing
the testimony from two of the complainant's cousins that the complainant had had sexual
intercourse with Timmy. Id.
          The First Court of Appeals relied on the rationale in Reynolds and Hood to conclude
that the excluded evidence did fall within the category of evidence that would "explain or
rebut" the state's medical evidence. Tex. R. Evid. 412(b)(2)(A); Miles, 61 S.W.3d at 686. 
The court noted the cousins' testimony would likely be inadmissible hearsay falling within
the Burks


 holding. Miles, 61 S.W.3d at 687. The complainant's own testimony would not
be inadmissible hearsay, however. So, the court went on to weigh the probative value of
such evidence against its prejudicial effect. Id. Pointing to the complainant's admission
that she lied to her cousin about having had sex with Timmy, the court concluded the jury
should have had the right to weigh the complainant's credibility against that of Miles. For
this reason, the court held the trial court abused its discretion by determining the evidence
was more prejudicial than probative. Id.
                    2.       Excluded Testimony Does Not Rebut or Explain Medical Evidence
          Without evidence regarding when these alleged sexual encounters occurred, we
cannot conclude this excluded evidence explained the State's medical evidence. Unlike
the letter in Reynolds in which the complainant described several years of sexual abuse
by another man, Lampkins' testimony fails to explain or rebut the State's medical evidence. 
We note A.C. denied having had this conversation with Lampkins, thereby distinguishing
this case from Miles, in which the complainant admitted having made the statement
regarding prior sexual activity. Even taking this testimony as true, we still cannot determine
whether the alleged thirty-three partners may have been had after the examination
revealing the injuries to A.C.'s hymen, in which case, the evidence would be of no value. 
By contrast, in Reynolds, the letter is authored by the complainant herself and offers a
more concrete time line with which to gauge whether the testimony actually explains the
state's evidence. Here, we do not have such information. The trial court did not abuse its
discretion by excluding this evidence. 
                     3.       Excluded Evidence Constitutes Inadmissible Hearsay
          The Waco court addressed a similar issue concerning Rule 412 with a different
approach in Burks, 40 S.W.3d 698. In defense of allegations of sexual assault and
indecency with a child, the defendant sought to admit a note by the complainant that
described a prior sexual encounter with a person other than the defendant. Id. at 699. The
court held that the note was inadmissible hearsay and that Rule 412 could not be used as
a vehicle to gain admission of otherwise inadmissible evidence. Id. at 701. We agree and
conclude Kennedy cannot use Rule 412 to get otherwise inadmissible hearsay before the
jury. Even if the trial court had been incorrect in its application of Rule 412, we would
uphold its ruling on this alternate theory. See Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990).
          D.       Testimony Regarding Alleged Sexual Activity Between A.C. and C.M.
          In the in camera investigation, Lampkins testified to the following: "And then I got
home and I asked her about it, and she said, well, he never raped me -- the first time, she
said, he never raped me; he came in and caught me in the bed with [C.M.], and he made
[C.M.] leave." Later, outside the presence of the jury, Lampkins initially testified Kennedy
did see A.C. and C.M. having sex. A short time later, she clarified, testifying that Kennedy
"caught [C.M.] pulling up his pants." Kennedy contends the exclusion of this testimony was
error.
          Kennedy also complains of the trial court's exclusion of Kennedy's own version of
events on this matter. While the trial court allowed Kennedy to testify to the alleged threat
A.C. made to him as retaliation against his disciplinary measures, the trial court disallowed
any reference to Kennedy allegedly catching A.C. and C.M. in some kind of sexual activity. 
Rather, he testified A.C. threatened "to tell everyone that I had been messing with her"
because Kennedy intended to inform A.C.'s mother about a disciplinary problem. 

                    1.       No Offer of Proof as to What Kennedy's Testimony Would Have                                 Been

          While we can determine the general nature of the excluded testimony from the
preliminary discussions among the attorneys and the trial court, the record does not
contain an offer of proof from which we can analyze the excluded testimony in detail. 
Kennedy may have testified that he caught A.C. and C.M. having sex. Or he may have
testified, as did Lampkins, that he only saw C.M. pull his pants up. To preserve for review
a ruling on evidence, the record must contain a timely, specific objection and, if the ruling
excludes evidence, an offer of proof.


 See Tex. R. Evid. 103(a); Tex. R. App. P. 33.1(a). 
Simply put, we cannot determine the issue; any error in excluding this testimony was not
preserved for our review. We therefore will limit further analysis to the exclusion of
Lampkins' testimony regarding the incident.
                     2.       Probably Not Evidence of Victim's Past Sexual Behavior
          First, because Lampkins' testimony consists of speculation that A.C. and C.M.
engaged in some sort of sexual activity, we question whether this evidence qualifies as a
specific instance of "past sexual behavior" of A.C. as contemplated by Rule 412. Beyond
that, it is difficult to conclude that such speculative evidence rebuts or explains the State's
medical evidence. On its face, evidence C.M. was pulling up his pants does not
necessarily explain the tears in A.C.'s hymen. The excluded testimony here resembles the
testimony at issue in Rankin in which "witnesses made only vague references to the
complainant's alleged sexual activity." Rankin v. State, 821 S.W.2d 230, 233 (Tex.
App.—Houston [14th Dist.] 1991, no pet.). 
                    3.       Evidence More Prejudicial Than Probative
          Even taking this evidence at its most damaging, we still conclude that the prejudicial
effect of the evidence outweighs the probative value it would lend. The implication of
Lampkins' testimony might shed some light on a motive to fabricate allegations against
Kennedy, but only minimally more so than did Kennedy's own testimony regarding the
threat without reference to sexual activity. The excluded testimony would add only the
element of speculated past sexual activity with C.M., i.e., the jury got to hear Kennedy's
testimony regarding the alleged threat A.C. issued to him in response to disciplinary action
against her. Therefore, any probative value of the excluded testimony concerning
suspected sexual activity between A.C. and C.M. is very limited; its main effect would be
prejudicial by intimating at past sexual activity of A.C. The trial court did not abuse its
discretion by excluding the testimony suggesting past sexual activity between A.C. and
C.M.


 We overrule Kennedy's contention.
III.      Exclusion of Hearsay Evidence
          A.       Testimony from Lampkins Concerning "Get[ting] Stories Straight" 
          Kennedy also complains the trial court abused its discretion by excluding evidence
from Lampkins that A.C. encouraged her friends to "get [their] stories straight." Outside
the presence of the jury, Lampkins testified A.C. told Lampkins and two other friends
"that[,] in case we all had to testify at court[,] that we all needed to have the same story." 
Lampkins continued, testifying A.C. "told us our stories had to be that when he walked in,
after he made that guy leave, that he started touching her. She never said that they had
sexual intercourse. She just said that he touched her, that's it. That's what she told me." 
Lampkins explained A.C. then "told us that we were going to have to say that he touched
her so she wouldn't get in trouble." Lampkins repeated much of this testimony during the
trial court's in camera investigation regarding related evidence. Testimony to this effect,
Kennedy argues, is admissible as a statement against interest and, as such, an exception
to the rule excluding hearsay. See Tex. R. Evid. 803(24). 
          B.       Statement Against Interest Exception to Hearsay
          The Rules of Evidence provide that a statement against interest falls outside the rule
excluding hearsay and defines a statement against interest as:
A statement which was at the time of its making so far contrary to the
declarant's pecuniary or proprietary interest, or so far tended to subject the
declarant to civil or criminal liability, or to render invalid a claim by the
declarant against another, or to make the declarant an object of hatred,
ridicule, or disgrace, that a reasonable person in declarant's position would
not have made the statement unless believing it to be true. In criminal
cases, a statement tending to expose the declarant to criminal liability is not
admissible unless corroborating circumstances clearly indicate the
trustworthiness of the statement.

Tex. R. Evid. 803(24). On appeal, Kennedy limits his analysis to that portion of Rule
803(24) dealing with a statement against penal interest.


 The State, likewise, limits its
response to only that aspect of Rule 803(24) and correctly notes that any determination
regarding the admissibility of a statement against penal interest in accordance with Rule
803(24) requires a two-step inquiry. See Woods v. State, 152 S.W.3d 105, 113 (Tex. Crim.
App. 2004), cert. denied, ___ U.S. ___, 125 S.Ct 2295 (2005). First, the trial court must
determine whether the statement in question tends to expose the declarant to criminal
liability. Bingham v. State, 987 S.W.2d 54, 57 (Tex. Crim. App. 1999). Second, the trial
court must determine if there are corroborating circumstances that clearly indicate the
trustworthiness of the statement. Id. 
          Whether a statement is, in fact, a statement against interest under Rule 803(24)
must be determined from the circumstances of each case. Drone v. State, 906 S.W.2d
608, 612 (Tex. App.—Austin 1995, pet. ref'd). We review a trial court's decision to admit
or exclude a hearsay statement under Rule 803(24) for an abuse of discretion. See
Bingham, 987 S.W.2d at 57. 
          C.       Statement Against Penal Interest Not Applicable
          After reviewing A.C.'s alleged statements, we conclude the record does not
demonstrate that the statements would expose A.C. to criminal liability in the manner
contemplated by Rule 803(24). Here, Kennedy argues that A.C.'s admission to her friends
she had been lying is perjury and subordination of perjury: "Perjury subjects the declarant
to criminal liabilities and is therefore a statement against her interest." The offense of
perjury, however, as described by the Penal Code, requires that the statement at issue be
made under oath. See Tex. Pen. Code Ann. § 37.02(a)(1) (Vernon 2003). Here, the
statement is one A.C. allegedly made to her friends at one of their homes. The context of
these statements clearly indicates they were not made under oath. Of course, A.C.'s
testimony regarding the abuse was made under oath. However, this is not the statement
sought to be admitted and, thus, cannot be the focus of our analysis. The statement at
issue—the one allegedly made to A.C.'s friends—does not subject A.C. to criminal liability
for perjury. The statement against penal interest exception, therefore, is inapplicable. 
          Additionally, we find nothing in the record in the way of corroborating circumstances
as plainly required by Rule 803(24). Kennedy points to his own testimony about finding
A.C. in bed with a boy and the accompanying threats to accuse him as circumstances that
corroborate the excluded testimony. We note this is previously excluded testimony rather
than corroborating circumstances. We have found no authority that would permit
consideration of such testimony as qualifying corroborating circumstances under Rule
803(24). Thus, even if the first prong of the statement against penal interest exception
were somehow satisfied here, Kennedy's argument would still fail because of the absence
of corroborating circumstances. As presented to us on appeal, the trial court's exclusion
of Lampkins' testimony as a statement against penal interest was not an abuse of
discretion. We overrule Kennedy's third point of error.
 

IV.      Conclusion
          Having overruled all of Kennedy's contentions regarding the trial court's exclusion
of testimony under Tex. R. Evid. 412 and 803(24), we affirm the trial court's judgment.


                                                                           Donald R. Ross
                                                                           Justice


DISSENTING OPINION
          Kennedy offered evidence from Raschella Lampkins that the complaining witness
told her and two other friends that they needed to have the same story, that they were
going to have to say Kennedy touched A.C. so A.C. would not get in trouble, and that A.C.
told them what their stories had to be concerning Kennedy touching her. The majority
affirms the exclusion of this evidence, to which I dissent.
          The majority opinion reaches its conclusion because "Kennedy limits his analysis
to that portion of Rule 803(24) dealing with a statement against penal interest." Therefore,
the majority does not analyze whether this evidence was admissible based on other
portions of Tex. R. Evid. 803(24).
          I believe the evidence was admissible as provided by Rule 803(24) as a statement
against the declarant's social interest and as a statement invalidating a claim by the
witness. This issue was clearly presented to the trial court—the evidence was offered by
Kennedy, the State objected, based on hearsay, and Kennedy countered that the evidence
was admissible as a statement against interest as set out in Tex. R. Evid. 803(24). I
believe the issue has been sufficiently briefed in this Court. In the brief submitted to this
Court, Kennedy presents an issue that the trial court erred by not admitting evidence under
Rule 803(24). In the summary of the argument, Kennedy states the court erred in finding
that the testimony did not fall under the exception to hearsay for a statement against
interest under Rule 803(24). Kennedy argues on appeal that such denial was error and
the evidence should have been allowed to be presented to the jury. In the argument
section of the brief, Kennedy repeats the issue and quotes in its entirety Texas Rule of
Evidence 803(24). Kennedy then cites a case as authority, Robinson v. Harkins & Co., 711
S.W.2d 619, 621 (Tex. 1986), which involves a statement embodying all three interests
expressed in the rule (pecuniary, penal, and social). I believe that Kennedy has complied
with the rule so that this issue is properly before the Court and should be addressed. 
Texas Rule of Appellate Procedure 38(h) requires that the brief contain a clear and concise
argument for the contentions made, with appropriate citations to authorities and to the
record. Tex. R. App. P. 38(h). Here, the contention made is that the statement is an
exception to the hearsay rule by virtue of the exceptions set out in Rule 803(24). The rule
in its entirety is quoted as the authority, and a citation is given to a case and to the record. 
The briefing rules found in the Texas Rules of Appellate Procedure "are meant to acquaint
the court with the issues in a case and to present argument that will enable the court to
decide the case." Tex. R. App. P. 38.9. The rules are to be construed liberally, and
substantial compliance with the rules is sufficient unless the court determines the rules
have been flagrantly violated (in which case the court may require further briefing), or that
the case has not been properly presented, or that the law and authorities have not been
properly cited (in which case the court may postpone submission, require additional
briefing, or make any other necessary order for a satisfactory submission of the case). 
Tex. R. App. P. 38.9. Kennedy's brief does not violate Rule 38.9 and substantially complies
with the Texas Rules of Appellate Procedure.


 Therefore, I will analyze the issues fairly
raised in Kennedy's brief. 
I.        EXCLUSION OF HEARSAY EVIDENCE
A.Testimony from Lampkins Concerning "Get[ting] Stories Straight" 
          Kennedy complains the trial court abused its discretion by excluding evidence from
Lampkins that A.C. encouraged her friends to "get [their] stories straight." Outside the
presence of the jury, Lampkins testified A.C. told Lampkins and two other friends "that[,]
in case we all had to testify at court[,] that we all needed to have the same story." 
Lampkins continued, testifying A.C. "told us our stories had to be that when he walked in,
after he made that guy leave, that he started touching her. She never said that they had
sexual intercourse. She just said that he touched her, that's it. That's what she told me." 
Lampkins explained A.C. then "told us that we were going to have to say that he touched
her so she wouldn't get in trouble." Lampkins repeated much of this testimony during the
trial court's in camera investigation regarding related evidence. Testimony to this effect,
Kennedy argues, is admissible as a statement against interest and, as such, an exception
to the rule excluding hearsay. See Tex. R. Evid. 803(24). 
          B.       Statement Against Interest Exception to Hearsay
          The Texas Rules of Evidence provide that a statement against interest falls outside
the rule excluding hearsay and defines a statement against interest as:
A statement which was at the time of its making so far contrary to the
declarant's pecuniary or proprietary interest, or so far tended to subject the
declarant to civil or criminal liability, or to render invalid a claim by the
declarant against another, or to make the declarant an object of hatred,
ridicule, or disgrace, that a reasonable person in declarant's position would
not have made the statement unless believing it to be true. In criminal
cases, a statement tending to expose the declarant to criminal liability is not
admissible unless corroborating circumstances clearly indicate the
trustworthiness of the statement.

Tex. R. Evid. 803(24). The State limits its response to only one aspect of Rule 803(24) by
pointing to the rule that any determination regarding the admissibility of a statement against
penal interest in accordance with Rule 803(24) requires a two-step inquiry. See Woods
v. State, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004), cert. denied, ___ U.S. ___, 125
S.Ct. 2295 (2005). However, Rule 803(24) requires much more analysis than just whether
a statement is one against the declarant's penal interest. 
          Whether a statement is, in fact, a statement against interest under Rule 803(24)
must be determined from the circumstances of each case. Drone v. State, 906 S.W.2d
608, 612 (Tex. App.—Austin 1995, pet. ref'd). We review a trial court's decision to admit
or exclude a hearsay statement under Rule 803(24) for an abuse of discretion. See
Bingham v. State, 987 S.W.2d 54, 57 (Tex. Crim. App. 1999).
          1.       Invalidating a Claim by Declarant
          Initially, the language involving the invalidation of the declarant's claim against
another seems to address the statement excluded here. Although no Texas caselaw has
developed the application of the language "render invalid a claim by the declarant against
another" in these circumstances, we note that the alleged statement, if believed by the jury,
would tend to invalidate A.C.'s claim of abuse. So, while there is no authority delineating
the boundaries of this aspect of Rule 803(24), I conclude that Lampkins's testimony would
be admissible in that A.C.'s statement would have rendered A.C.'s claim against Kennedy
invalid. 
          2.       Statement Against Social Interest
          To be admitted on the basis it would subject the declarant to disgrace, the statement
must be "in the context of the declarant's social interests" and must be against such
interests "at the time it was made." Burks v. State, 40 S.W.3d 698, 701 (Tex. App.—Waco
2001, pet. ref'd) (citing Owens v. State, 916 S.W.2d 713, 718 (Tex. App.—Waco 1996, no
pet.); Bell v. State, 877 S.W.2d 21, 24 n.2 (Tex. App.—Dallas 1994, pet. ref'd)). 
          There appears to be a rather narrow application of Rule 803(24)'s statement against
the "social interest" exception. See Sills v. State, 846 S.W.2d 392, 397 (Tex.
App.—Houston [14th Dist.] 1992, pet. ref'd). Sills describes the types of facts which would
give rise to the application of this facet of Rule 803(24):
To be admissible, a statement against interest that makes the declarant the
object of hatred, ridicule, or disgrace must be in the context of the declarant's
social interests, such as a confession by a small-town minister of
homosexual conduct, Purtell v. State, 761 S.W.2d 360, 369 (Tex. Crim. App.
1988), . . . or a statement by a husband that he was responsible for an
automobile accident whereby his wife became a paraplegic. Robinson v.
Harkins & Co., 711 S.W.2d 619, 621 (Tex. 1986). 

Sills, 846 S.W.2d at 397 (some citations omitted); see also Franklin v. State, 992 S.W.2d
698, 706 (Tex. App.—Texarkana 1999, pet. ref'd).
          A type of statement that qualifies as a statement against social interest is presented
when an appellant convicted of sexual assault of a child complained of the trial court's
admission of hearsay statements in which the fourteen-year-old complainant confessed
to her mother to having had sexual relations with the twenty-six-year-old appellant. See
Glover v. State, 102 S.W.3d 754, 766 (Tex. App.—Texarkana 2002, pet. ref'd). She made
the statements reluctantly and only did so when confronted by the possibility that her
mother already "knew everything," subjecting the complainant to punishment if she were
to be untruthful. Id. This Court reasoned that "a reasonable person in [the complainant]'s
position would have known that her statements would subject her to disgrace in the eyes
of her mother." Id. Therefore, the trial court did not abuse its discretion by admitting the
hearsay statements. 
          To illustrate what evidence does not qualify as a statement against social interest,
the Waco court's opinion in Burks should be considered. There, the complainant's note
to her friend boasting about a sexual encounter with a boy was not admissible in an
indecency and sexual assault of a child case. Burks, 40 S.W.3d at 701. The note did not
qualify as a statement against social interest because it was not of a nature that would
have subjected the declarant/complainant to "hatred, ridicule, or disgrace, that a
reasonable person in declarant's position would not have made the statement unless
believing it to be true." Id. 
          Here, on the other hand, evidence that A.C. attempted to influence her friends to
testify Kennedy touched her, so she would not get in trouble, runs directly against A.C.'s
social interests. Her family, friends, and community would likely treat her with varying
degrees and types of hostility, distrust, and resentment if it were revealed that she had lied
about the abuse. Common sense and social norms suggest A.C. would have been subject
to "disgrace, ridicule, or hatred" for having falsely accused a family friend of sexual assault. 
So the statement more closely resembles those deemed admissible in Glover and Purtell
than it does the inadmissible statement in Burks. 
          Outside the presence of the jury, A.C. denied ever having made this statement. 
Likewise, other friends of A.C. testified outside the presence of the jury that A.C. did not
make such a statement regarding "get[ting] [their] stories straight." So, there is a conflict
in the evidence. Such conflicts and related issues concerning credibility of witnesses fall
squarely within the traditional purview of the jury. See Lester v. State, 120 S.W.3d 897,
902 (Tex. App.—Texarkana 2003, no pet.). The initial determination of trustworthiness is
an issue of law, while the ultimate weight to be given to the testimony will be decided by
the jury.


 I believe the court erred in excluding the testimony of Lampkins on this subject. 
II.       Harm Analysis
          Where, as here, erroneous exclusion of evidence is the result of misapplication of
the Texas Rules of Evidence and its admission is not claimed to be required by the United
States or Texas Constitutions, we analyze harm under Texas Rule of Evidence 103(a),
which provides that error may not be predicated on a ruling that admits or excludes
evidence unless a "substantial right" of the party is affected. Tex. R. Evid. 103(a); Potier
v. State, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002). The standard is the same as that
under Rule 44.2(b). Tex. R. App. P. 44.2(b); Potier, 68 S.W.3d at 666. A substantial right
is affected when the error had a substantial and injurious effect or influence on the jury's
verdict. Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); Lester, 120 S.W.3d at
903. A criminal conviction should not be overturned for nonconstitutional error if the
appellate court, after examining the record as a whole, has a fair assurance the error did
not influence the jury, or had but a slight effect. See Tex. R. App. P. 44.2(b); Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (citing King v. State, 953 S.W.2d 266
(Tex. Crim. App. 1997)).
          The excluded evidence, if believed by the jury, would seriously call into question the
testimony of the complaining witness. A.C. was the primary witness to testify as to the guilt
of Kennedy and, unless her testimony was believed, there was no direct evidence of
Kennedy's guilt. The excluded testimony went to the heart of the case—the credibility and
believability of the only witness who testified Kennedy committed sexual assault. The
excluded testimony attacked the credibility of the witness on the most important issue in
the case, not some collateral matter or some detail of little importance. I cannot say with
fair assurance that the erroneous exclusion of these statements of the complaining witness
did not affect Kennedy's substantial rights. 
          Under these circumstances, I believe we must reverse the case for further
proceedings. I respectfully dissent.
 
                                                                           Jack Carter
                                                                           Justice

Date Submitted:      July 26, 2005
Date Decided:         December 7, 2005

Publish