COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

 


 
 
  
 PABLO PEDRO CORDERO,
 ,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,  
  
                             Appellee. 
  
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 §
 
  
 
 
  
 No.
 08-10-00347-CR
  
 Appeal
 from the
  
 409th
 Judicial District Court
  
 of
 El Paso County, Texas 
                                     
 (TC#
 20080D05179) 
 
 


 

O P I N I O N

            Pablo Pedro Cordero was convicted of
aggravated sexual assault of a child.  At
the conclusion of the punishment phase of the trial, the jury assessed
punishment at confinement in the Institutional Division of the Texas Department
of Criminal Justice for a period of fifteen (15) years and fined Appellant
$6,000.  In three issues on appeal,
Cordero argues that the judgment of the trial court should be reversed because
the trial court:  (1) erred when it did
not permit Appellant to explore alternative theories as to how the victim was
injured; (2) erred by not permitting Appellant to inquire as to the victim’s
sexual history as a possible explanation for her injuries; and (3) violated
Appellant’s due process rights when the trial court permitted a detective to
inform the jury about an admission made by Appellant.  We affirm.

Background

            Appellant
was indicted for the offense of aggravated sexual assault of a child on
October 22, 2008.  The offense was
alleged to have occurred on or about July 29, 2008.  He pled not guilty to the charge and proceeded
to a jury trial.

            During the
trial, the evidence established that Appellant is the father of Valerie
Castillo and that she spends most of each calendar year living in Las Vegas,
Nevada with her mother.  On June 25,
2008, Valerie began staying at her grandmother, Julia Cordero’s residence in El
Paso, Texas.  Appellant was also living
with his mother at that time, as were other relatives, including Appellant’s
son Pablo, Julia’s son, George Cordero, and George’s girlfriend, Melva Vasquez.

            Valerie
testified that around midnight on July 28, 2008, she and Appellant were the
only two people still awake in the house.  They were lying on the floor in the living
room, and at some point, Appellant turned off the television and placed his
hand on Valerie’s stomach.  He then moved
his hand inside of Valerie’s shorts, and underwear.  Appellant removed his hand, unbuttoned Valerie’s
shorts and then put his hand back inside of her shorts and underwear and put
his finger inside of her vagina.  This
went on for several minutes and Valerie did not know what to do.  When he stopped touching her, Appellant asked
Valerie if she wanted him to continue. 
Valerie did not reply.  Appellant
attempted to move her legs further apart, but she resisted.  She was able to feel Appellant’s penis against
her leg.  Valerie testified that after he
removed his hand from her shorts, Appellant slapped himself in the face and
said “I’m so stupid . . . I’m sorry.”  He
asked Valerie if she wanted him to call the police, but Valerie did not answer.
 Instead, she went looking for her uncle,
George Cordero, and she told George and his girlfriend, Melva Vasquez, what had
happened.  She later told her grandmother
as well.  The police were not called
until the next day.

            A number of
police officers testified as to their involvement in the case, including
Detective David Samaniego.  Samaniego
testified, outside of the presence of the jury, that during the investigation,
Appellant had indicated his willingness to take a polygraph examination
regarding the incident.  However, when he
arrived at the police substation, he changed his mind.  When Samaniego asked Appellant why he had
changed his mind, Appellant responded:  “You
know what, I’m not going to take it because I’ll fail and I’ll take the blame for
it.”  The trial court permitted the
prosecutor to introduce only the last portion of Appellant’s admission in front
of the jury.  As a result, when asked the
question:  “At that time did Mr. Cordero
make an admission to you,” Samaniego responded:  “He said, I take the blame for this.”  No mention of the context of the statement
was offered in front of the jury, and counsel for Appellant did not
cross-examine Samaniego concerning the admission.

            Kathy
Justice, a Sexual Assault Nurse Examiner (SANE), testified that she conducted a
sexual assault exam on Valerie Castillo which included an examination of her
genital area.  Justice’s examination
revealed very small abrasions/tears in the posterior portion of Valerie’s
vagina in the area where the labia major meets the labia minor.  The injuries were just inside of the vagina
and were consistent with Valerie’s statement that she was digitally penetrated
by Appellant.  Justice testified that she
did not notice anything out of the ordinary relative to Valerie’s hygiene and
noticed no indications that Valerie had been scratching herself.  Finally, Justice offered her opinion that it
was unlikely that the injuries were caused by accident or touching on the
outside of Valerie’s clothing.

            George
Cordero testified for the defense and stated that Valerie did inform him of
what had happened.  He and Melva Vasquez
took Valerie to the hospital to be examined. 
Melva Vasquez told the jury that Valerie did not bathe regularly and
when she spoke to Valerie about this, Valerie got upset.  Melva testified that she did see Valerie
scratch her vaginal area, and she did overhear Valerie threaten her father on
one occasion.

            Appellant
also testified.  He told the jury that he
was a truck driver and that when he was in town, he stayed at his mother’s
house because he wanted to see his children. 
He testified that while he was in town on this occasion, he learned that
Valerie was not bathing often enough and, as a result, he gave her a bath in
the yard using a hose.  After the
incident with the hose, Valerie told Appellant that he “was going to regret it
the rest of my life.”  Appellant told the
jury that when he awoke that night, Valerie was on top of him and he pushed her
away.  He stated that Valerie said that
he had done “something wrong” to her, that he had “molested her,” “raped her.”  He testified that he had clothes on and he
did not have an erection.  Appellant
denied touching Valerie inappropriately and denied penetrating her vagina with
his finger.  Appellant testified that he
believes that Valerie made everything up to get back at him for washing her
down with a hose in the yard.  The jury
found Appellant guilty of the single count in the indictment, aggravated sexual
assault of a minor, and following the punishment phase of the trial, assessed
punishment at confinement in the Institutional Division of the Texas Department
of Criminal Justice for a period of fifteen years and $6,000 fine.  The Court imposed sentence in accordance with
the jury’s verdict.

            On appeal, Cordero argues that the judgment of
the trial court should be reversed and the case remanded for a new trial
because the trial court:  (1) erred when
it did not permit Appellant to explore alternative theories as to how the
victim may have been injured; (2) erred when it did not permit Appellant to
inquire as to the victim’s sexual history as a possible explanation for her
injuries; and (3) violated Appellant’s due process rights when the trial court
permitted Detective Samaniego to testify as to an out of context admission made
by Appellant.

Limitations of Appellant’s Cross-Examination

            In
his first two issues, Appellant contends that the trial court impermissibly
limited his ability to cross-examine witnesses regarding alternative theories
as to how Valerie may have been injured. 
Specifically, Appellant complains that the trial court should have
permitted him to cross-examine witnesses regarding:  (1) Valerie’s hygienic practices; (2) the
tight clothing Valerie wore; and (3) Valerie’s sexual history.  Appellant argues that if the trial court had
not limited his cross-examination into these areas, he would have been able to
show that:  (1) Valerie did not bathe
regularly, was unclean as a result, and caused her own injuries; (2) the
clothes she wore were so tight that they could have caused her injuries; and
(3) Valerie was sexually active such that someone else could have caused her
injuries.

            In essence,
Appellant is complaining about the trial court’s decision to exclude evidence.
We review a trial court’s decision to admit or exclude evidence under an abuse
of discretion standard.  Cameron v. State, 241 S.W.3d 15, 19
(Tex.Crim.App. 2007); Shuffield v. State,
189 S.W.3d 782, 793 (Tex.Crim.App. 2006). 
A trial court abuses its discretion when its decision is so clearly
wrong as to lie outside that zone within which reasonable people might
disagree.  Walters v. State, 247 S.W.3d 204, 217 (Tex.Crim.App. 2007); McDonald v. State, 179 S.W.3d 571, 576
(Tex.Crim.App. 2005).  We uphold the
trial court’s ruling if it is reasonably supported by the record and correct
under any theory of law applicable to the case.  Ramos v.
State, 245 S.W.3d 410, 418 (Tex.Crim.App. 2008); Willover v. State, 70 S.W.3d 841, 845 (Tex.Crim.App. 2002).  An appellate court must review the trial court’s
ruling in light of what was before the court at the time the ruling was made.  Willover,
70 S.W.3d at 845, citing Weatherred v. State, 15 S.W.3d 540, 542
(Tex.Crim.App. 2000).

“[T]he right of cross-examination
by the accused of a testifying State’s witness includes the right to impeach
the witness with relevant evidence that might reflect bias, interest,
prejudice, inconsistent statements, traits of character affecting credibility,
or evidence that might go to any impairment or disability affecting the witness’s
credibility.”  Virts v. State, 739 S.W.2d 25, 29 (Tex.Crim.App. 1987).  Like our review of a trial court’s decision to
admit or exclude evidence, we also review the trial court’s decision to limit
cross-examination under an abuse of discretion standard.  Sansom
v. State, 292 S.W .3d 112, 118 (Tex.App--Houston [14th Dist.] 2008, pet.
ref’d), citing Matchett v. State, 941 S.W.2d 922, 940 (Tex.Crim.App. 1996) and
will not disturb the trial court’s ruling so long as it lies within the zone of
reasonable disagreement.  Montgomery v. State, 810 S .W.2d 372,
391 (Tex.Crim.App. 1991)(op. on reh’g).

            A criminal
defendant’s constitutional right to a meaningful opportunity to present a
complete defense is grounded in the Fourteenth Amendment’s Due Process Clause
and the Sixth Amendment’s Compulsory Process and Confrontation Clauses.  Anderson
v. State, 301 S.W.3d 276, 280 (Tex.Crim.App. 2009), citing Crane v. Kentucky,
476 U.S. 683, 690, 160 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986).  A trial court’s “clearly erroneous ruling”
excluding evidence may rise to the level of a constitutional violation if the
evidence excluded is relevant and reliable and “forms such a vital portion of
the case that exclusion effectively precludes the defendant from presenting a
defense.”  Wiley v. State, 74 S.W.3d 399, 405 (Tex.Crim.App. 2002), quoting Potier v. State, 68 S.W.3d 657, 665 (Tex.Crim.App. 2002).

The Sixth Amendment guarantees a
criminal defendant the right to confront the witnesses against him.  U.S.
Const. Amend. VI; Pointer v. Texas,
380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965).  Article I, section ten of the Texas
Constitution also provides for the right to confront witnesses.  Tex.Const.
art. I, § 10.  This right to
confrontation includes the right to cross-examine one’s accuser.  Carroll
v. State, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996).  Cross-examination allows the jury to assess
the credibility of the witness and allows facts to be brought out tending to
discredit the witness by showing that her testimony is untrue, prejudiced, or
biased.  Id.; see also Hammer v. State,
296 S.W.3d 555, 561 (Tex.Crim.App. 2009).  The scope of appropriate cross-examination is
necessarily broad and extends to any matter that could reflect on the witness’s
credibility.  Carroll, 916 S.W.2d at 497; Virts,
739 S.W.2d at 29; see also Tex.R.Evid. 611(b).

While a trial court may violate a
defendant’s right of confrontation by improperly limiting cross-examination,
the scope of appropriate cross-examination is not unlimited.  Carroll,
916 S.W.2d at 497-98; see also Hammer,
296 S.W.3d at 561 (trial court has “wide discretion in limiting the scope and
extent of cross-examination”).  For
example, a trial court may limit the scope of cross-examination to prevent
harassment, prejudice, confusion of the issues, harm to the witness, and
repetitive or marginally relevant interrogation.  Delaware
v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674
(1986); Carroll, 916 S.W.2d at 498.  “Notwithstanding the trial court’s discretion
in this area, jurors are entitled to have the benefit of the defense theory
before them so that they can make an informed decision regarding the weight to
accord the witness’s testimony, even though they may ultimately reject the
theory.”  Sansom, 292 S.W.3d at 119.

A review of the record in this case
reveals that Appellant’s defensive theories at trial were that Valerie:  (1) lied about the allegations because she was
angry that Appellant had washed her in the yard of the residence using a hose;
(2) maintained poor hygiene and, as a result, scratched herself causing her own
injuries; and (3) dressed in very tight and revealing clothes which could have
caused her injuries.  We address each in
turn.

Preliminarily, we note that while
Valerie admitted to the incident in the yard of the residence as related by
Appellant, she denied any poor hygiene, and maintained that she adhered to the
house rule to bathe and stay clean, thereby contradicting Appellant’s testimony
and the testimony of Melva Vasquez.[1]  This was a credibility determination that the
jury was free to decide.  We defer to the
jury’s credibility and weight determinations because the jury is the sole judge
of the witnesses’ credibility and the weight to be given their testimony.  See
Jackson v. Virginia, 443 U.S. 307, 326, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560
(1979).

            After Valerie testified that she
maintained good hygiene, Appellant’s counsel began to inquire about the types
of clothing she wore, and whether the clothes were tight fitting.  The State lodged a relevance objection to
that line of inquiry.  Counsel attempted
to explain the relevance by stating that it “is what led up to something else
that had occurred.”  The trial court
sustained the objection.  Counsel then
asked “[a]nd you wanted to buy some revealing clothes, didn’t you?”  The trial court sustained the State’s
objection to the question and excused the jury. 
During a brief discussion outside the presence of the jury, Appellant’s
counsel informed the court that he wished to ask questions about Valerie’s
wearing of tight fitting clothes, the fact that the clothes were not being
washed, that Valerie was not staying clean, was “itching and scratching,” and
could have injured herself.  The trial
court permitted Appellant’s counsel to ask:  “Were you wearing tight-fitting clothes?”  Valerie’s response was “[y]es.”  In response to other questions posed by
Appellant’s counsel, Valerie testified that not bathing did not cause her to
itch or to scratch herself.

Other than sustaining objections to
the relevance of whether Valerie wanted to buy or wore revealing clothes, we
find nothing in the record indicating that the trial court limited Appellant’s
cross-examination in any manner.  While
the trial court did properly sustain a relevance objection to counsel’s
question about revealing clothes,
that was hardly a limitation on cross-examination of the type referred to by
Appellant.  Indeed, the court informed
Appellant’s counsel that he was permitted to inquire as to whether Valerie may
have caused the injuries to herself and also allowed questions about Valerie’s tight fitting clothes and personal
hygiene.  Following that ruling, other
than asking Valerie if she scratched herself, counsel made no further inquiry
along that line of questions.

Citing Rule 412 of the Texas Rules
of Evidence, Appellant also claims that the trial court limited his cross-examination
by not permitting him to inquire as to Valerie’s sexual history as a possible explanation
for her injuries.  The relevant portion
of Rule 412 states that:  “In a
prosecution for sexual assault or aggravated sexual assault, or attempt to
commit sexual assault or aggravated sexual assault, evidence of specific
instances of an alleged victim’s past sexual behavior is also not admissible,
unless:  (1) such evidence is admitted in
accordance with paragraphs (c) and (d) of this rule; (2) it is evidence:  (A) that is necessary to rebut or explain
scientific or medical evidence offered by the State,” and “(3) its probative
value outweighs the danger of unfair prejudice.”  Tex.R.Evid.
412(b).  See Holloway v. State, 751 S.W.2d 866, 869-70 (Tex.Crim.App. 1988);
Stephens v. State, 978 S.W.2d 728,
732 (Tex.App.--Austin 1998, pet. ref’d).

Appellant claims that he had
evidence concerning Valerie’s alleged promiscuity and that he desired to
present that evidence to the jury.  He
informed the court of his intent to do so outside the presence of the jury, and
the trial court asked counsel how such evidence might be admissible.  Counsel for Appellant indicated he had no
case law to support his position, but that he was aware that Valerie had sexual
experience.  Counsel further informed the
trial court that Valerie was having intercourse on a regular basis prior to her
arrival in El Paso from her mother’s home in Las Vegas, and that she “may have
been satisfying herself” thereby causing the injuries described by Nurse
Justice.  He repeated that it was his
intent to explain to the jury that “the scratches could have been by the victim
herself either through the uncleanliness or through masturbation.”  When the trial court asked how scratching or
masturbation was related to “the history of alleged sexual promiscuity,”
Appellant’s counsel reiterated his position that the victim could have caused
the injuries herself through scratching or masturbation.  The trial court then instructed counsel that while
he was permitted to inquire into whether Valerie may have caused the injuries
herself, he was not permitted to question her about her sexual past.  When the trial resumed in front of the jury,
Appellant’s counsel asked questions of Valerie about not bathing, itching, and
scratching.  He never returned to the
subject of masturbation as a possible explanation for the injuries.

Appellant relies on Reynolds v. State, 890 S.W.2d 156
(Tex.App.--Texarkana 1994, no pet.), to support his contention the trial court
abused its discretion by excluding evidence of Valerie’s sexual history.  In Reynolds,
the state introduced medical evidence that the victim’s vaginal opening
appeared to be slightly stretched.  Id. at 157.  Employing Rule 412, Reynolds sought to
question the complainant regarding three prior sexual partners and to introduce
a letter from the complainant to her grandmother documenting years of sexual
abuse by another man.  Reynolds, 890 S.W.2d at 157.  Reynolds argued that this evidence would rebut
or explain the state’s medical evidence supporting the victim’s allegations.  Id.  On
review, the appeals court concluded that the excluded evidence would explain
the state’s evidence of vaginal trauma and would rebut the complainant’s denial
of any prior sexual abuse or activity, and held that the trial court abused its
discretion by excluding the evidence under Rule 412 and that the error was not
harmless.  See id. at 157-58.

In another case relied on by
Appellant, Hood v. State, 944 S.W.2d
743 (Tex.App.--Amarillo 1997, no pet.), the state introduced medical evidence
that established two, well-healed tears in the complainant’s hymen.  Id.
at 745.  The tears appeared to have
occurred “sixty days or more” before examination.  Id.  The tears, according to the state’s witness,
demonstrated the complainant’s vagina had been penetrated.  Id.  On cross-examination, defense counsel learned
the witness had inquired into the complainant’s sexual history.  Id.  Counsel then sought, but was denied,
permission from the trial court to cross-examine the state’s witness on whether
the complainant had disclosed any prior sexual activity.  Id.

Outside the presence of the jury,
defense counsel made his offer of proof, eliciting testimony from the state’s
witness that the complainant “thought that she had” sexual intercourse.  Id.  The court concluded that any risk of prejudice
contemplated by Rule 412 was already interjected into the evidence before the
jury through evidence of the complainant’s pregnancy at age fifteen and her
unmarried status.  Id. at 746.  Additionally,
the state had relied heavily on the evidence of vaginal tears to prove Hood had
penetrated the complainant’s vagina.  Id.  Relying on Reynolds
and discounting the element of age into the Rule 412 balancing test, the court
held that the prejudicial effect of the excluded evidence did not outweigh the
probative value the evidence would offer and that the exclusion of such
evidence was harmful error.  Hood, 944 S.W.2d at 747.

The situation here is
dissimilar.  Absent any evidence that
these alleged sexual encounters even occurred, we cannot conclude the excluded
evidence explained the State’s medical evidence of Valerie’s injuries.  While we are able to determine the general
nature of the excluded testimony from the discussions among the attorneys and
the trial court, as noted above, the record does not contain an offer of proof
from which we can analyze the excluded testimony in detail.  Counsel never informed the court of what
evidence of Valerie’s sexual history he possessed.  There is no indication of the number of
sexual partners, if any.  There is no
indication of how recently any sexual activity may have occurred, or even if it
did occur.  Indeed, there is no evidence
of anything related to Valerie’s sexual history that counsel wanted to present
to the jury.  Counsel did not even return
to the subject of Valerie causing the injuries herself by way of masturbation
after the trial court ruled that he was permitted to so inquire.  To preserve for review a ruling on evidence,
the record must contain a timely, specific objection and, if the ruling
excludes evidence, an offer of proof.  See Tex.R.Evid.
103(a); Tex.R.App.P. 33.1(a).  Without any evidence, we simply cannot determine
the issue.  Error, if any, in excluding
this testimony was not preserved for our review.

The record establishes that the
trial court did allow Appellant to present his defensive theories to the
jury.  Specifically, he contended that
Valerie lied about the allegations because she was angry that Appellant had
washed her in the yard of the residence using a hose, maintained poor hygiene
and, as a result, scratched herself causing her own injuries, and dressed in
very tight and unwashed clothes causing her to scratch herself which could have
caused her injuries.

Based on our review of the record,
we conclude that the trial court did not limit Appellant’s cross-examination in
such a manner as to constitute a violation of his due process rights and his
right to confront and cross-examine the witnesses against him.  Further, the trial court’s actions were not
so clearly wrong as to lie outside of the zone within which reasonable people
might disagree, and therefore do not constitute an abuse of discretion.

In light of the foregoing, Issues One
and Two are overruled.

Detective Samaniego’s Testimony

In his final issue, Appellant
argues that the trial court violated his due process rights by allowing
Detective Samaniego to testify to an out of context admission made by
Appellant.

Outside the presence of the jury,
the State informed the trial court that its next witness would be Detective
David Samaniego.  The State told the
trial court that Appellant had previously agreed to take a polygraph
examination, but when he appeared to actually take the exam, Appellant informed
Samaniego that he had changed his mind, was not going to take the polygraph
examination because he would fail the test and would take the blame for what
had happened.  Appellant’s counsel was
not present for the polygraph examination. 
Appellant’s counsel told the objected to the evidence.

When the jury returned to the
courtroom, Detective Samaniego testified that he met with Appellant on August
4, 2008.  At that point, Appellant’s
counsel took Samaniego on voir dire
and asked whether Appellant had requested that his attorney be present for the polygraph
examination.  Samaniego responded that
Appellant made no such request. 
Samaniego testified that Appellant:  (1) was not in custody; (2) voluntarily
appeared to take the polygraph examination; (3) was free to leave if he so
chose; and (4) had a conversation with Samaniego.  The jury was again excused and Samaniego
related to the court the conversation that he had with Appellant.  Samaniego told the court that he reminded
Appellant that Appellant was there to take a polygraph examination and asked
him if he was voluntarily consenting to take the examination.  At that point, Appellant said to Samaniego
“[y]ou know what, I’m not going to take it because I’ll fail and I’ll take the
blame for it.”  At no point during the encounter
did Samaniego read Appellant his Miranda[2]
rights.  On cross-examination, also
outside the presence of the jury, Samaniego told the court that when Appellant
told Samaniego “I’ll take the blame for this,” Samaniego believed that
Appellant was referring to the incident rather than taking the blame for not
taking the polygraph examination. 
Samaniego had such a belief because Appellant also told him that he
(Appellant) was going to fail the polygraph examination.  The trial court ruled that the State would be
permitted to question Samaniego as to Appellant’s admission that he would “take
the blame for it.”

The jury was again brought back
into the courtroom at which time the State asked Samaniego if Appellant made an
admission to him.  Samaniego responded “[y]es.”  When asked what the admission was, Samaniego
responded:  “He said, I’ll take the blame
for this.”  Appellant’s counsel did not
cross-examine Samaniego any further in the presence of the jury.  Appellant contends that the trial court erred
by permitting Samaniego to testify that Appellant refused to take the polygraph
test and would take the blame and that he was placed in the untenable position
of being unable to rebut Samaniego’s testimony regarding the admission, because
in order to do so he would have had to elicit inadmissible evidence of his
refusal to take a polygraph examination.  See
Simmons v. United States, 390
U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968)(“[W]hen a defendant
testifies in support of a motion to suppress evidence on Fourth Amendment
grounds, his testimony may not thereafter be admitted against him at trial on
the issue of guilt unless he makes no objection.”); Avila v. State, 856 S.W.2d 260, 261 (Tex.App.--El Paso 1993, pet.
ref’d)(citing Simmons for the proposition
that a person may not be required to surrender one constitutional right to
assert another with regard to testifying about the voluntariness of a statement
outside the jury’s presence).

Where, in his first two issues,
Appellant complains of the trial court’s decision to exclude evidence, here he challenges
the trial court’s decision to admit evidence.  Again, we review a trial court’s decision to
admit or exclude evidence under an abuse of discretion standard.  Cameron,
241 S.W.3d at 19; Shuffield, 189
S.W.3d at 793.  A trial court abuses its
discretion when its decision is so clearly wrong as to lie outside that zone
within which reasonable people might disagree.  Walters,
247 S.W.3d at 217; McDonald, 179
S.W.3d at 576.  We uphold the trial court’s
ruling if it is reasonably supported by the record and correct under any theory
of law applicable to the case.  Ramos, 245 S.W.3d at 418; Willover, 70 S.W.3d at 845.  An appellate court must review the trial court’s
ruling in light of what was before the court at the time the ruling was made.  Willover,
70 S.W.3d at 845, citing Weatherred, 15 S.W.3d at 542.

The Court of Criminal Appeals has long
held that evidence of the results of a polygraph test is not admissible on
behalf of either the State or the defendant.  Tennard
v. State, 802 S.W.2d 678 683-84 (Tex.Crim.App. 1990); Lewis v. State, 500 S.W.2d 167, 168 (Tex.Crim.App. 1973).  However, here, there were no results of a polygraph examination to
admit into evidence because Appellant never took the test.

No testimony regarding a polygraph
examination or Appellant’s refusal to take a polygraph examination was ever
elicited by the State nor did the State seek to admit the results of the
non-existent polygraph examination. 
Appellant waived his right under the Fifth Amendment of the United
States Constitution and testified in his own defense at trial.  He elected not to explain or even address the
admission he made to Samaniego.  We fail
to see what constitutional right was surrendered in order to assert another
constitutional right.  See Simmons v. United States, 390 U.S.
at 394, 88 S.Ct. at 976; Avila, 856
S.W.2d at 261.  While Appellant may have
believed that in order to explain the admission, he would have had to refer to
his refusal to take a polygraph examination, he was not actually faced with
being forced to choose between basic constitutional rights.

Additionally, we find it
significant that Appellant:  (1) and his
counsel initially agreed that Appellant would undergo a polygraph examination
and questioning; (2) was never told he was under arrest; (3) was told he was
not in custody; (4) was told that he was free to go at any time; (5) presented
no evidence that anyone threatened, coerced, or restrained him; (6) never
requested that his attorney be present for the polygraph examination; and (7)
freely and voluntarily chose not to take the polygraph examination.  Certainly, had he chosen to do so, Appellant
could have explained his admission to the jury without referring to his refusal
to take a polygraph examination.  See Darling v. State, 262 S.W.3d 913,
920 (Tex.App.--Texarkana 2008, pet. ref’d)(trial court did not abuse its
discretion in admitting testimony that appellant was offered additional
scientific testing where no reference was made to polygraph or lie detector
test).

Under these facts and
circumstances, Simmons and its
underlying reasoning are inapplicable.  The
trial court’s actions were not so clearly wrong as to lie outside of the zone
within which reasonable people might disagree, and therefore do not constitute
an abuse of discretion.

Appellant’s third issue is
overruled.

Conclusion

            Having
overruled each of Appellant’s issues, the judgment of the trial court is
affirmed.

 

 

April 11, 2012

                                                                                    CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J., Rivera, and
Antcliff, JJ.

 

(Do Not Publish)











[1]
Additionally, Nurse Justice testified that she did not notice anything out of
the ordinary regarding Valerie’s hygiene and observed no indications that
Valerie had been scratching herself.





[2]
See Miranda v. Arizona, 384 U.S. 436,
86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).