COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

PABLO PEDRO CORDERO,
,

§

§

No. 08-10-00347-CR

Appeal from the

Appellant,

§

v.

§

409th Judicial District Court

THE STATE OF TEXAS,

§

of El Paso County, Texas

(TC# 20080D05179)

Appellee.

§

§

§

## **O P I N I O N**

Pablo Pedro Cordero was convicted of aggravated sexual assault of a child. At the conclusion of the punishment phase of the trial, the jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of fifteen (15) years and fined Appellant $6,000. In three issues on appeal, Cordero argues that the judgment of the trial court should be reversed because the trial court: (1) erred when it did not permit Appellant to explore alternative theories as to how the victim was injured; (2) erred by not permitting Appellant to inquire as to the victim's sexual history as a possible explanation for her injuries; and (3) violated Appellant's due process rights when the trial court permitted a detective to inform the jury about an admission made by Appellant. We affirm.

### Background

Appellant was indicted for the offense of aggravated sexual assault of a child on October 22, 2008. The offense was alleged to have occurred on or about July 29, 2008. He pled not guilty to the charge and proceeded to a jury trial.

During the trial, the evidence established that Appellant is the father of Valerie Castillo and that she spends most of each calendar year living in Las Vegas, Nevada with her mother. On June 25, 2008, Valerie began staying at her grandmother, Julia Cordero's residence in El Paso, Texas. Appellant was also living with his mother at that time, as were other relatives, including Appellant's son Pablo, Julia's son, George Cordero, and George's girlfriend, Melva Vasquez.

Valerie testified that around midnight on July 28, 2008, she and Appellant were the only two people still awake in the house. They were lying on the floor in the living room, and at some point, Appellant turned off the television and placed his hand on Valerie's stomach. He then moved his hand inside of Valerie's shorts, and underwear. Appellant removed his hand, unbuttoned Valerie's shorts and then put his hand back inside of her shorts and underwear and put his finger inside of her vagina. This went on for several minutes and Valerie did not know what to do. When he stopped touching her, Appellant asked Valerie if she wanted him to continue. Valerie did not reply. Appellant attempted to move her legs further apart, but she resisted. She was able to feel Appellant's penis against her leg. Valerie testified that after he removed his hand from her shorts, Appellant slapped himself in the face and said "I'm so stupid . . . I'm sorry." He asked Valerie if she wanted him to call the police, but Valerie did not answer. Instead, she went looking for her uncle, George Cordero, and she told George and his girlfriend, Melva Vasquez, what had happened. She later told her grandmother as well. The police were not called until the next day.

A number of police officers testified as to their involvement in the case, including Detective David Samaniego. Samaniego testified, outside of the presence of the jury, that during the investigation, Appellant had indicated his willingness to take a polygraph examination

2

regarding the incident. However, when he arrived at the police substation, he changed his mind. When Samaniego asked Appellant why he had changed his mind, Appellant responded: "You know what, I'm not going to take it because I'll fail and I'll take the blame for it." The trial court permitted the prosecutor to introduce only the last portion of Appellant's admission in front of the jury. As a result, when asked the question: "At that time did Mr. Cordero make an admission to you," Samaniego responded: "He said, I take the blame for this." No mention of the context of the statement was offered in front of the jury, and counsel for Appellant did not cross-examine Samaniego concerning the admission.

Kathy Justice, a Sexual Assault Nurse Examiner (SANE), testified that she conducted a sexual assault exam on Valerie Castillo which included an examination of her genital area. Justice's examination revealed very small abrasions/tears in the posterior portion of Valerie's vagina in the area where the labia major meets the labia minor. The injuries were just inside of the vagina and were consistent with Valerie's statement that she was digitally penetrated by Appellant. Justice testified that she did not notice anything out of the ordinary relative to Valerie's hygiene and noticed no indications that Valerie had been scratching herself. Finally, Justice offered her opinion that it was unlikely that the injuries were caused by accident or touching on the outside of Valerie's clothing.

George Cordero testified for the defense and stated that Valerie did inform him of what had happened. He and Melva Vasquez took Valerie to the hospital to be examined. Melva Vasquez told the jury that Valerie did not bathe regularly and when she spoke to Valerie about this, Valerie got upset. Melva testified that she did see Valerie scratch her vaginal area, and she did overhear Valerie threaten her father on one occasion.

3

Appellant also testified.   He told the jury that he was a truck driver and that when he was in town, he stayed at his mother's house because he wanted to see his children.   He testified that while he was in town on this occasion, he learned that Valerie was not bathing often enough and, as a result, he gave her a bath in the yard using a hose.   After the incident with the hose, Valerie told Appellant that he "was going to regret it the rest of my life."   Appellant told the jury that when he awoke that night, Valerie was on top of him and he pushed her away.   He stated that Valerie said that he had done "something wrong" to her, that he had "molested her," "raped her."   He testified that he had clothes on and he did not have an erection.   Appellant denied touching Valerie inappropriately and denied penetrating her vagina with his finger.   Appellant testified that he believes that Valerie made everything up to get back at him for washing her down with a hose in the yard.   The jury found Appellant guilty of the single count in the indictment, aggravated sexual assault of a minor, and following the punishment phase of the trial, assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of fifteen years and $6,000 fine.   The Court imposed sentence in accordance with the jury's verdict.

On appeal, Cordero argues that the judgment of the trial court should be reversed and the case remanded for a new trial because the trial court:   (1) erred when it did not permit Appellant to explore alternative theories as to how the victim may have been injured; (2) erred when it did not permit Appellant to inquire as to the victim's sexual history as a possible explanation for her injuries; and (3) violated Appellant's due process rights when the trial court permitted Detective Samaniego to testify as to an out of context admission made by Appellant.

**Limitations of Appellant's Cross-Examination**

4

In his first two issues, Appellant contends that the trial court impermissibly limited his ability to cross-examine witnesses regarding alternative theories as to how Valerie may have been injured. Specifically, Appellant complains that the trial court should have permitted him to cross-examine witnesses regarding: (1) Valerie's hygienic practices; (2) the tight clothing Valerie wore; and (3) Valerie's sexual history. Appellant argues that if the trial court had not limited his cross-examination into these areas, he would have been able to show that: (1) Valerie did not bathe regularly, was unclean as a result, and caused her own injuries; (2) the clothes she wore were so tight that they could have caused her injuries; and (3) Valerie was sexually active such that someone else could have caused her injuries.

In essence, Appellant is complaining about the trial court's decision to exclude evidence. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex.Crim.App. 2007); *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex.Crim.App. 2006). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable people might disagree. *Walters v. State*, 247 S.W.3d 204, 217 (Tex.Crim.App. 2007); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005). We uphold the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex.Crim.App. 2008); *Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App. 2002). An appellate court must review the trial court's ruling in light of what was before the court at the time the ruling was made. *Willover*, 70 S.W.3d at 845, *citing Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000).

"[T]he right of cross-examination by the accused of a testifying State's witness includes

5

the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility." *Virts v. State*, 739 S.W.2d 25, 29 (Tex.Crim.App. 1987). Like our review of a trial court's decision to admit or exclude evidence, we also review the trial court's decision to limit cross-examination under an abuse of discretion standard. *Sansom v. State*, 292 S.W .3d 112, 118 (Tex.App--Houston [14th Dist.] 2008, pet. ref'd), *citing Matchett v. State*, 941 S.W.2d 922, 940 (Tex.Crim.App. 1996) and will not disturb the trial court's ruling so long as it lies within the zone of reasonable disagreement. *Montgomery v. State*, 810 S .W.2d 372, 391 (Tex.Crim.App. 1991)(op. on reh'g).

A criminal defendant's constitutional right to a meaningful opportunity to present a complete defense is grounded in the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process and Confrontation Clauses. *Anderson v. State*, 301 S.W.3d 276, 280 (Tex.Crim.App. 2009), *citing Crane v. Kentucky*, 476 U.S. 683, 690, 160 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). A trial court's "clearly erroneous ruling" excluding evidence may rise to the level of a constitutional violation if the evidence excluded is relevant and reliable and "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Wiley v. State*, 74 S.W.3d 399, 405 (Tex.Crim.App. 2002), *quoting Potier v. State*, 68 S.W.3d 657, 665 (Tex.Crim.App. 2002).

The Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. U.S. CONST. AMEND. VI; *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). Article I, section ten of the Texas Constitution also provides for the right to confront witnesses. TEX.CONST. art. I, § 10. This right to confrontation includes the

6

right to cross-examine one's accuser. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996). Cross-examination allows the jury to assess the credibility of the witness and allows facts to be brought out tending to discredit the witness by showing that her testimony is untrue, prejudiced, or biased. *Id.*; *see also Hammer v. State*, 296 S.W.3d 555, 561 (Tex.Crim.App. 2009). The scope of appropriate cross-examination is necessarily broad and extends to any matter that could reflect on the witness's credibility. *Carroll,* 916 S.W.2d at 497; *Virts*, 739 S.W.2d at 29; *see also* TEX.R.EVID. 611(b).

While a trial court may violate a defendant's right of confrontation by improperly limiting cross-examination, the scope of appropriate cross-examination is not unlimited. *Carroll*, 916 S.W.2d at 497-98; *see also Hammer*, 296 S.W.3d at 561 (trial court has "wide discretion in limiting the scope and extent of cross-examination"). For example, a trial court may limit the scope of cross-examination to prevent harassment, prejudice, confusion of the issues, harm to the witness, and repetitive or marginally relevant interrogation. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *Carroll*, 916 S.W.2d at 498. "Notwithstanding the trial court's discretion in this area, jurors are entitled to have the benefit of the defense theory before them so that they can make an informed decision regarding the weight to accord the witness's testimony, even though they may ultimately reject the theory." *Sansom*, 292 S.W.3d at 119.

A review of the record in this case reveals that Appellant's defensive theories at trial were that Valerie: (1) lied about the allegations because she was angry that Appellant had washed her in the yard of the residence using a hose; (2) maintained poor hygiene and, as a result, scratched herself causing her own injuries; and (3) dressed in very tight and revealing clothes which could

7

have caused her injuries.   We address each in turn.

Preliminarily, we note that while Valerie admitted to the incident in the yard of the residence as related by Appellant, she denied any poor hygiene, and maintained that she adhered to the house rule to bathe and stay clean, thereby contradicting Appellant's testimony and the testimony of Melva Vasquez.[1]   This was a credibility determination that the jury was free to decide.   We defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony.   *See Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560 (1979).

After Valerie testified that she maintained good hygiene, Appellant's counsel began to inquire about the types of clothing she wore, and whether the clothes were tight fitting.   The State lodged a relevance objection to that line of inquiry.   Counsel attempted to explain the relevance by stating that it "is what led up to something else that had occurred."   The trial court sustained the objection.   Counsel then asked "[a]nd you wanted to buy some revealing clothes, didn't you?"   The trial court sustained the State's objection to the question and excused the jury.   During a brief discussion outside the presence of the jury, Appellant's counsel informed the court that he wished to ask questions about Valerie's wearing of tight fitting clothes, the fact that the clothes were not being washed, that Valerie was not staying clean, was "itching and scratching," and could have injured herself.   The trial court permitted Appellant's counsel to ask:   "Were you wearing tight-fitting clothes?"   Valerie's response was "[y]es."   In response to other questions posed by Appellant's counsel, Valerie testified that not bathing did not cause her to itch or to scratch herself.

---

[1] Additionally, Nurse Justice testified that she did not notice anything out of the ordinary regarding Valerie's hygiene and observed no indications that Valerie had been scratching herself.

Other than sustaining objections to the relevance of whether Valerie wanted to buy or wore revealing clothes, we find nothing in the record indicating that the trial court limited Appellant's cross-examination in any manner. While the trial court did properly sustain a relevance objection to counsel's question about *revealing clothes*, that was hardly a limitation on cross-examination of the type referred to by Appellant. Indeed, the court informed Appellant's counsel that he was permitted to inquire as to whether Valerie may have caused the injuries to herself and also allowed questions about Valerie's *tight fitting clothes* and personal hygiene. Following that ruling, other than asking Valerie if she scratched herself, counsel made no further inquiry along that line of questions.

Citing Rule 412 of the Texas Rules of Evidence, Appellant also claims that the trial court limited his cross-examination by not permitting him to inquire as to Valerie's sexual history as a possible explanation for her injuries. The relevant portion of Rule 412 states that: "In a prosecution for sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless: (1) such evidence is admitted in accordance with paragraphs (c) and (d) of this rule; (2) it is evidence: (A) that is necessary to rebut or explain scientific or medical evidence offered by the State," and "(3) its probative value outweighs the danger of unfair prejudice." TEX.R.EVID. 412(b). *See Holloway v. State*, 751 S.W.2d 866, 869-70 (Tex.Crim.App. 1988); *Stephens v. State*, 978 S.W.2d 728, 732 (Tex.App.--Austin 1998, pet. ref'd).

Appellant claims that he had evidence concerning Valerie's alleged promiscuity and that he desired to present that evidence to the jury. He informed the court of his intent to do so outside

9

the presence of the jury, and the trial court asked counsel how such evidence might be admissible. Counsel for Appellant indicated he had no case law to support his position, but that he was aware that Valerie had sexual experience. Counsel further informed the trial court that Valerie was having intercourse on a regular basis prior to her arrival in El Paso from her mother's home in Las Vegas, and that she "may have been satisfying herself" thereby causing the injuries described by Nurse Justice. He repeated that it was his intent to explain to the jury that "the scratches could have been by the victim herself either through the uncleanliness or through masturbation." When the trial court asked how scratching or masturbation was related to "the history of alleged sexual promiscuity," Appellant's counsel reiterated his position that the victim could have caused the injuries herself through scratching or masturbation. The trial court then instructed counsel that while he was permitted to inquire into whether Valerie may have caused the injuries herself, he was not permitted to question her about her sexual past. When the trial resumed in front of the jury, Appellant's counsel asked questions of Valerie about not bathing, itching, and scratching. He never returned to the subject of masturbation as a possible explanation for the injuries.

Appellant relies on *Reynolds v. State*, 890 S.W.2d 156 (Tex.App.--Texarkana 1994, no pet.), to support his contention the trial court abused its discretion by excluding evidence of Valerie's sexual history. In *Reynolds*, the state introduced medical evidence that the victim's vaginal opening appeared to be slightly stretched. *Id.* at 157. Employing Rule 412, Reynolds sought to question the complainant regarding three prior sexual partners and to introduce a letter from the complainant to her grandmother documenting years of sexual abuse by another man. *Reynolds*, 890 S.W.2d at 157. Reynolds argued that this evidence would rebut or explain the state's medical evidence supporting the victim's allegations. *Id.* On review, the appeals court

10

concluded that the excluded evidence would explain the state's evidence of vaginal trauma and would rebut the complainant's denial of any prior sexual abuse or activity, and held that the trial court abused its discretion by excluding the evidence under Rule 412 and that the error was not harmless. *See id.* at 157-58.

In another case relied on by Appellant, *Hood v. State*, 944 S.W.2d 743 (Tex.App.--Amarillo 1997, no pet.), the state introduced medical evidence that established two, well-healed tears in the complainant's hymen. *Id.* at 745. The tears appeared to have occurred "sixty days or more" before examination. *Id.* The tears, according to the state's witness, demonstrated the complainant's vagina had been penetrated. *Id.* On cross-examination, defense counsel learned the witness had inquired into the complainant's sexual history. *Id.* Counsel then sought, but was denied, permission from the trial court to cross-examine the state's witness on whether the complainant had disclosed any prior sexual activity. *Id.*

Outside the presence of the jury, defense counsel made his offer of proof, eliciting testimony from the state's witness that the complainant "thought that she had" sexual intercourse. *Id.* The court concluded that any risk of prejudice contemplated by Rule 412 was already interjected into the evidence before the jury through evidence of the complainant's pregnancy at age fifteen and her unmarried status. *Id.* at 746. Additionally, the state had relied heavily on the evidence of vaginal tears to prove Hood had penetrated the complainant's vagina. *Id.* Relying on *Reynolds* and discounting the element of age into the Rule 412 balancing test, the court held that the prejudicial effect of the excluded evidence did not outweigh the probative value the evidence would offer and that the exclusion of such evidence was harmful error. *Hood*, 944 S.W.2d at 747.

The situation here is dissimilar. Absent any evidence that these alleged sexual encounters

11

even occurred, we cannot conclude the excluded evidence explained the State's medical evidence of Valerie's injuries. While we are able to determine the general nature of the excluded testimony from the discussions among the attorneys and the trial court, as noted above, the record does not contain an offer of proof from which we can analyze the excluded testimony in detail. Counsel never informed the court of what evidence of Valerie's sexual history he possessed. There is no indication of the number of sexual partners, if any. There is no indication of how recently any sexual activity may have occurred, or even if it did occur. Indeed, there is no evidence of anything related to Valerie's sexual history that counsel wanted to present to the jury. Counsel did not even return to the subject of Valerie causing the injuries herself by way of masturbation after the trial court ruled that he was permitted to so inquire. To preserve for review a ruling on evidence, the record must contain a timely, specific objection and, if the ruling excludes evidence, an offer of proof. *See* TEX.R.EVID. 103(a); TEX.R.APP.P. 33.1(a). Without any evidence, we simply cannot determine the issue. Error, if any, in excluding this testimony was not preserved for our review.

The record establishes that the trial court did allow Appellant to present his defensive theories to the jury. Specifically, he contended that Valerie lied about the allegations because she was angry that Appellant had washed her in the yard of the residence using a hose, maintained poor hygiene and, as a result, scratched herself causing her own injuries, and dressed in very tight and unwashed clothes causing her to scratch herself which could have caused her injuries.

Based on our review of the record, we conclude that the trial court did not limit Appellant's cross-examination in such a manner as to constitute a violation of his due process rights and his right to confront and cross-examine the witnesses against him. Further, the trial court's actions

12

were not so clearly wrong as to lie outside of the zone within which reasonable people might disagree, and therefore do not constitute an abuse of discretion.

In light of the foregoing, Issues One and Two are overruled.

### Detective Samaniego's Testimony

In his final issue, Appellant argues that the trial court violated his due process rights by allowing Detective Samaniego to testify to an out of context admission made by Appellant.

Outside the presence of the jury, the State informed the trial court that its next witness would be Detective David Samaniego. The State told the trial court that Appellant had previously agreed to take a polygraph examination, but when he appeared to actually take the exam, Appellant informed Samaniego that he had changed his mind, was not going to take the polygraph examination because he would fail the test and would take the blame for what had happened. Appellant's counsel was not present for the polygraph examination. Appellant's counsel told the objected to the evidence.

When the jury returned to the courtroom, Detective Samaniego testified that he met with Appellant on August 4, 2008. At that point, Appellant's counsel took Samaniego on *voir dire* and asked whether Appellant had requested that his attorney be present for the polygraph examination. Samaniego responded that Appellant made no such request. Samaniego testified that Appellant: (1) was not in custody; (2) voluntarily appeared to take the polygraph examination; (3) was free to leave if he so chose; and (4) had a conversation with Samaniego. The jury was again excused and Samaniego related to the court the conversation that he had with Appellant. Samaniego told the court that he reminded Appellant that Appellant was there to take a polygraph examination and asked him if he was voluntarily consenting to take the examination. At that point, Appellant said

13

to Samaniego "[y]ou know what, I'm not going to take it because I'll fail and I'll take the blame for it." At no point during the encounter did Samaniego read Appellant his *Miranda*[2] rights. On cross-examination, also outside the presence of the jury, Samaniego told the court that when Appellant told Samaniego "I'll take the blame for this," Samaniego believed that Appellant was referring to the incident rather than taking the blame for not taking the polygraph examination. Samaniego had such a belief because Appellant also told him that he (Appellant) was going to fail the polygraph examination. The trial court ruled that the State would be permitted to question Samaniego as to Appellant's admission that he would "take the blame for it."

The jury was again brought back into the courtroom at which time the State asked Samaniego if Appellant made an admission to him. Samaniego responded "[y]es." When asked what the admission was, Samaniego responded: "He said, I'll take the blame for this." Appellant's counsel did not cross-examine Samaniego any further in the presence of the jury. Appellant contends that the trial court erred by permitting Samaniego to testify that Appellant refused to take the polygraph test and would take the blame and that he was placed in the untenable position of being unable to rebut Samaniego's testimony regarding the admission, because in order to do so he would have had to elicit inadmissible evidence of his refusal to take a polygraph examination. *See Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968)("[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."); *Avila v. State*, 856 S.W.2d 260, 261 (Tex.App.--El Paso 1993, pet. ref'd)(citing *Simmons* for the proposition that a person may not be required to surrender

---

[2] *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

14

one constitutional right to assert another with regard to testifying about the voluntariness of a statement outside the jury's presence).

Where, in his first two issues, Appellant complains of the trial court's decision to exclude evidence, here he challenges the trial court's decision to admit evidence. Again, we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Cameron*, 241 S.W.3d at 19; *Shuffield*, 189 S.W.3d at 793. A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable people might disagree. *Walters*, 247 S.W.3d at 217; *McDonald*, 179 S.W.3d at 576. We uphold the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Ramos*, 245 S.W.3d at 418; *Willover*, 70 S.W.3d at 845. An appellate court must review the trial court's ruling in light of what was before the court at the time the ruling was made. *Willover,* 70 S.W.3d at 845, *citing Weatherred*, 15 S.W.3d at 542.

The Court of Criminal Appeals has long held that evidence of the results of a polygraph test is not admissible on behalf of either the State or the defendant. *Tennard v. State*, 802 S.W.2d 678 683-84 (Tex.Crim.App. 1990); *Lewis v. State*, 500 S.W.2d 167, 168 (Tex.Crim.App. 1973). However, here, there were no *results* of a polygraph examination to admit into evidence because Appellant never took the test.

No testimony regarding a polygraph examination or Appellant's refusal to take a polygraph examination was ever elicited by the State nor did the State seek to admit the results of the non-existent polygraph examination. Appellant waived his right under the Fifth Amendment of the United States Constitution and testified in his own defense at trial. He elected not to explain or even address the admission he made to Samaniego. We fail to see what constitutional

15

right was surrendered in order to assert another constitutional right. *See Simmons v. United States*, 390 U.S. at 394, 88 S.Ct. at 976; *Avila*, 856 S.W.2d at 261. While Appellant may have believed that in order to explain the admission, he would have had to refer to his refusal to take a polygraph examination, he was not actually faced with being forced to choose between basic constitutional rights.

Additionally, we find it significant that Appellant: (1) and his counsel initially agreed that Appellant would undergo a polygraph examination and questioning; (2) was never told he was under arrest; (3) was told he was not in custody; (4) was told that he was free to go at any time; (5) presented no evidence that anyone threatened, coerced, or restrained him; (6) never requested that his attorney be present for the polygraph examination; and (7) freely and voluntarily chose not to take the polygraph examination. Certainly, had he chosen to do so, Appellant could have explained his admission to the jury without referring to his refusal to take a polygraph examination. *See Darling v. State,* 262 S.W.3d 913, 920 (Tex.App.--Texarkana 2008, pet. ref'd)(trial court did not abuse its discretion in admitting testimony that appellant was offered additional scientific testing where no reference was made to polygraph or lie detector test).

Under these facts and circumstances, *Simmons* and its underlying reasoning are inapplicable. The trial court's actions were not so clearly wrong as to lie outside of the zone within which reasonable people might disagree, and therefore do not constitute an abuse of discretion.

Appellant's third issue is overruled.

## Conclusion

Having overruled each of Appellant's issues, the judgment of the trial court is affirmed.

16

April 11, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)

17